J. K. PURIFOY, Appellant, v. RICHMOND & DANVILLE RAILROAD COMPANY.

*Railroads— Right-of-way— Counter claim—" At"—Change of Terminus.*

1. When a railroad is empowered to connect with another railroad "at the city of Charlotte, at the point which may be found most practicable," and the connection is made at a point 1,000 yards outside the city limits. but at the most practicable point, this is within the charter. "At," does not necessarily mean "in" the city.

2. When authority is given to connect with the C. & S. C. Railroad or with the N. C. Railroad, at Charlotte, and the railroad locates its line and proceeds to construct it to a junction with the N. C. Rail-

road, but a few months before its completion' to the latter point
crosses another railroad which connects with the C. & S. C. Rail-
road, and by permission of this latter railroad it runs its cars tem-
porarily over it to the C. & S. C. Railroad (laying down a third rail
by reason of difference in gauge), this is not a " construction of
its railroad to a junction with the C. & S. C. Railroad" which
deprives it of its election to connect with the N. C. Railroad.

3. Where the railroad was completed through the *locus in quo* prior to
the Act of 1872 (*The Code*, § 1952), it was not necessary to the val-
idity of the location that a map of the route should be filed.

4. When the charter provides that, in the absence of any contract the
corporation acquires title to 100 feet on each side of the track, and
if no claim for damages is brought in two years from the comple-
tion of that part of the road it is barred; the corporation has a
valid title to the right-of-way as its track is completed. *Railroad*
v. *McCaskill*, 94 N. C., 746.

5. The title of the railroad to the right-of-way once acquired, cannot be
lost by occupancy as to any part of it by the lapse of time. *The
Code*, § 150 ; *Railroad* v. *McCaskill*, 94 N. C., 746.

6. In a civil action, when there is no conflict of evidence, the Judge
should direct the verdict to be entered.

This was a CIVIL ACTION, tried before *Philips, J.*, and a jury,
at Spring Term, 1890, of MECKLENBURG Superior Court.
Appeal by the plaintiff. The facts sufficiently appear in the
opinion.

*Mr. W. B. Dowd*, for plaintiff.
*Messrs. D Schenck* and *G. F Bason*, for defendant.

CLARK, J.: Acts Special Session 1868, ch. 8, incorporated
the A.-L. Railroad of South Carolina, and authorized it "to
construct, equip and operate its road within the limits of
this State from any point on the South Carolina line to such
point on the C. & S. C. Railroad or the N. C. Railroad at
Charlotte as shall be found most practicable" and gave the
company "all the rights, powers and privileges conferred on
the C. & S. C. Railroad by ch. 84, Acts 1846–'7." Sections

25 and 27 of this last act give the corporation a right-of-way of 100 feet on each side of the center of the road-bed, reserving to the owners the right to apply for an assessment of damages within two years from the completion of that part of the road, and if application is not made within that time the claim is barred.

By a succession of charters and conveyances, all of which were in evidence, and are set out in the record, the rights conferred by aforesaid charter of 1868 have been transferred to and are vested in the A. & C. A.-L Railroad Company, the principal defendant.

The plaintiff sues in ejectment to recover land occupied by the track of defendant A & C. A.-L. Railroad, and damages for use and occupation. The *locus in quo* lies east of the A. & C. A.-L. Railroad, Trade Street depot, in Charlotte, and between said depot and the junction of the A. & C. A.-L. Railroad with the N. C. Railroad, which last point is 1,000 yards east of the city limits of Charlotte. The plaintiff's entire tract lies within the 100 feet from the center of the track of the defendant A. & C Railroad Company, and said company in its answer by way of counter claim sought to recover possession of the whole of said lot. Two sets of issues were submitted by the Court, one as to the plaintiff's right to recover the land covered by the road-bed and damages, the other as to defendants' right to recover the whole tract, it being within the 100 feet. There was no conflict of evidence, and the Court instructed the jury that they should return a verdict in favor of the defendant upon all the issues, and it was so entered. The plaintiff excepted to such direction and to the judgment, and appealed.

The plaintiff contends—

1. That the A. & N. C. A.-L. Railroad Company, having elected to construct its road to a junction with the C. & S. C. Railroad, could not afterwards change it to connect with the N. C. Railroad, and asked the Court so to charge. But the

evidence did not support this view.    There was no evidence
that the A. & C. A.-L. Railroad Company ever located its line
or constructed its road to a junction with the C. & S. C. Rail-
road.    The evidence is that, in 1871, when the A. & C. A.-L.
Railroad Company had completed its road to its Trade Street
depot at the north end of Charlotte, and further north-east-
ward through the *locus in quo*, it found the A., T. & O. Railroad
running from that point round the south-west side of Char-
lotte to the C. & S. C. Railroad, and, by consent of the A., T. & O.
Railroad, it used its track temporarily some eight months to
transfer its freight and passengers, laying down a third rail
on the A., T. & O. Railroad, owing to the difference in gauge.
In the meantime, the A. & C. A.-L. Railroad Company was
prosecuting the construction of its line as located, and for
which it had bought rights-of-way straightforward to their
connection with the N. C. Railroad on the north-east side of
Charlotte, to which point it was completed prior to August,
1872.    The evidence shows no construction of the A. & C.
A.-L. Railroad to the C. & S. C. Railroad, but a mere tempo-
rary connection over another railroad, and to make which
the A. & C. A.-L. Railroad Company had to run backwards
and over a part of its own line.    Its natural connection was
from the Trade Street depot straight forward to the N. C.
Railroad, and the evidence is that it had located and at that
very time was prosecuting the construction of its line to its
junction with the N. C. Railroad, to which point it was com-
pleted eight months later.    Besides, as the evidence is uncon-
tradicted that when this temporary connection was had over
the A., T. & Railroad, the A. & C. A-L. Railroad Company
had already completed its track through the *locus in quo*, we
do not see how the plaintiff could be affected if its conten-
tion that there had since been a change of the terminus
was sound, for, before going to either terminus, the track of
the A. & C. A.-L. Railroad had been built through this land
and title to the one hundred feet on either side acquired by

virtue of its charter, and such track has been continuously used ever since.

2. The plaintiff further contends that the charter authorized a connection with the N.'C. Railroad *at* Charlotte, and that this is not done by the present connection, which is at a point one thousand yards east of Charlotte. Possibly this point might have been raised by the owner of land sought to be condemned at the junction outside of the city limits, but we cannot see how it can avail the plaintiff, through whose land the track ran, any more than any other landowner along its whole line, for, after passing through plaintiff's land, the connection could still have been made either within or without the city limits. Nor do we concur in plaintiff's view that the authority to make the connection "at such point on the N. C. Railroad at Charlotte as shall be found most practicable" necessarily required the connection to be made *in* the city. The phraseology imports some discretion, and the evidence was that the location as selected was the best, according to the surveyor's report, and cost $80,000 less than any other would have done.

The A. & C. A. L. Railroad is 272 miles long, and authority to connect with the N. C. Railroad at Charlotte at the most practicable point is surely not transgressed when the most practicable point is half a mile from the city limits. "At" is defined by Webster to express, primarily, "nearness in place or time. *At* the house may be in or near the house." In Park's appeal, 64 Pa. (St.), 137, where a railroad twenty-four miles long was chartered from a point "at or near Parkersburg," it was held that a connection one and a half miles east of Parkersburg was not a transgression of the act. To the same purport is *O'Neal* v. *King*, 3 Jones, 517. But we need not cite further authorities.

3. The plaintiff further contends that the location was invalid because no map of the route was filed, as required by the Act of 1872 (*The Code,* § 1952). But, prior to the

passage of that act, the A. & C. A.-L. Railroad had been constructed through the *locus in quo*, and the filing of a map was, therefore, not required.

It was in evidence, and not contradicted, that the A. & C. A.-L. Railroad was constructed through the *locus in quo* in 1871. This gave it a title to one hundred feet on each side from the center of the track, and no statute of limitations runs against the railroad by reason of the occupancy of the right-of-way. *The Code*, § 150; *Railroad* v. *McCaskill*, 94 N. C., 746. The plaintiff did not buy the land till 1874—three years after the railroad was completed, and when he was put thereby on inquiry. He did not obtain a deed covering the part he sues for till 1881, and no demand was made till 1889—eighteen years after the construction of the railroad. Upon the evidence, the defendant was entitled to recover possession of the land upon his counter claim. Whether the plaintiff is entitled to allowance for betterments upon the facts, under *The Code*, § 473 (*Railroad* v. *McCaskill*, 98 N. C., 526), is a matter which is not before us.

In the view we have taken of the case, the other exceptions noted by plaintiff become immaterial and need not be adverted to.

There being no conflict of evidence, there was nothing for the jury to pass upon. His Honor properly, it being a civil action, directed the verdict to be entered.

*Per Curiam.*                                     No error.