STATE v. EDWARD LEE WALLACE, JR., AND
WOODROW WILSON HOLDER.

(Filed 16 December, 1959.)

**1. Criminal Law § 154—**

An appeal itself constitutes an exception to the judgment and raises the question of whether error of law appears upon the face of the record.

**2. Criminal Law §§ 13, 139—**

It is an essential of criminal jurisdiction that the warrant or indictment sufficiently charge an offense, and the Supreme Court will take notice *ex mero motu* of the insufficiency of the warrant or indictment, even in the absence of a motion in arrest of judgment.

**3. Automobiles § 82—**

A warrant which fails to charge that defendant was driving a motor vehicle at the time he failed to heed a police siren is fatally defective. G.S. 20-157(a).

**4. Indictment and Warrant § 9—**

The words "in violation of city ordinance, chapter ......, section ......," added to a warrant after the charge of an offense against the General Statutes of this State are surplusage and should be stricken.

**5. Criminal Law § 121—**

The arrest of judgments vacates the verdicts and judgments, but the State may thereafter proceed against defendants upon sufficient warrants or indictments.

**6. Automobiles § 65—**

Warrants for reckless driving which charged the offense in the language of the statute are sufficient. G.S. 20-140, (a), (b).

**7. Criminal Law § 159—**

Assignments of error not set out in the brief and in support of which no reason or argument is stated or authority cited are deemed abandoned. Rule 28, Rules of Practice in the Supreme Court.

STATE *v.* WALLACE.

8. **Automobiles §§ 65, 82— Evidence held sufficient to support conviction of driver and of owner of vehicle riding therein of reckless driving and failing to heed police siren.**

The State's evidence tended to show that an officer driving a patrol car, saw and followed a truck being driven over 35 m.p.h. in a residential district, that after the truck had turned around and stopped the officer stopped the patrol car, turned on the red light on its top, and got out and started walking toward the truck, whereupon the driver of the truck put it in reverse, and then entered an intersecting street, that the officer got back in the patrol car and began a chase during which the truck was driven at a very high rate of speed through stop lights etc., that when the truck was finally stopped one of the defendants was driving and the other defendant, a passenger in the truck, stated that he was the owner of the truck and that he did not tell the driver to stop until he saw that the police car was overtaking them. *Held* the evidence is sufficient to overrule nonsuit as to each defendant on charges of speeding and reckless driving, it being sufficient to show that the owner of the truck had the right to control its operation, was controlling its operation, and aided and abetted the driver in the commission of the offenses.

9. **Criminal Law § 9—**

All who participate in the commission of misdemeanors as aiders and abettors are guilty as principals.

10. **Automobiles § 65—**

The fact that warrants charge defendants with reckless driving upon a named road "at" an intersecting road, with evidence that the defendants' vehicle was operated on the named road in a reckless manner but was finally stopped some 250 yards from the named intersecting road, does not justify nonsuit for variance, since word "at" when used to designate a place is less definite than "in" or "on", and often means "near to".

11. **Criminal Law §§ 104, 108—**

An instruction to the effect that the evidence conclusively established all the elements of the offense charged but that the jury must be satisfied beyond a reasonable doubt that defendant was the culprit must be held for error, since the court may not intimate whether a material fact has been fully or sufficiently established. G.S. 1-180.

APPEAL by defendants from *Crissman, J.,* 13 April 1959 Term, of GUILFORD (Greensboro Division) for the trial of criminal actions.

Each defendant was tried in the Superior Court, on appeals from adverse judgments in the Municipal-County Court, Criminal Division, on three warrants charging him with a violation of the motor vehicle laws of the State.

WARRANTS AGAINST EDWARD LEE WALLACE, JR.

The first warrant, as amended in the Superior Court by the Solici-

tor for the State, and without objection by defendant, charges that
defendant Wallace on 18 May 1958, "at and in Guilford County, ex-
cept High Point, Deep River and Jamestown Townships, did unlaw-
fully and willfully operate a motor vehicle on a public highway upon
Pinecroft Road at High Point Road, Greensboro, North Carolina, at
or about 9:00 P. M., carelessly and heedlessly in a willful and wanton
disregard of the rights and safety of others and without due caution
and circumspection and at a speed and in a manner so as to endanger
and be likely to endanger person and property in that he did . . . . .
all in violation General Statutes of North Carolina Chapter 20 Sec-
tion 140."

The second warrant charges that defendant Wallace on 18 May
1958, "at and in Guilford County, except High Point, Deep River and
Jamestown Townships, did unlawfully, and willfuly violate the motor
vehicle laws of the State of North Carolina, to wit; did fail to heed
a police siren while being in ample hearing distance of the said Police
Siren, on Pinecroft Road, at High Point Road, Greensboro, North
Carolina, against the statute in such case made and provided and
against the peace and dignity of the State and in violation of City
Ordinance, Chapter    , Section    ."

The third warrant charges that defendant Wallace on 18 May 1958,
"at and in Guilford County, except High Point, Deep River and
Jamestown Townships, did unlawfully and willfuly operate a motor
vehicle on a public highway at a speed in excess of 35 miles per hour
in a residential district, to wit: 80 miles per hour on Pinecroft Road
at High Point Road, Greensboro, North Carolina, against the statute
in such case made and provided and against the peace and dignity of
the State and in violation of City Ordinance, Chapter    , Section
."

WARRANTS AGAINST WOODROW WILSON HOLDER.

The first and third warrants are in practically the identical words
as in the first and third warrants against defendant Wallace. The So-
licitor in the Superior Court amended the first warrant exactly as he
did the first warrant against the defendant Wallace.

The second warrant charges that defendant Holder on 18 May 1958,
"at and in Guilford County, except High Point, Deep River and
Jamestown Townships, did unlawfully and willfuly violate the Motor
Vehicle Laws of the State of North Carolina, to wit; did fail to heed
a Police Siren while same was in reasonable distance to the said de-
fendant, on Pinecroft and High Point Roads, Greensboro, North Car-
olina, against the statute in such case made and provided and against
the peace and dignity of the State and in violation of City Ordinance,
Chapter    , Section    ."

Upon motion of the Solicitor for the State, and without objection by the defendants, the court ordered all six cases consolidated for trial.

Plea: Not Guilty by each defendant as to all charges against him. Verdict: Each defendant is guilty of all three charges in the warrants against him.

From sentences of imprisonment in each of the three cases against him, each defendant appealed to the Supreme Court.

*Malcolm B. Seawell, Attorney General, and H. Horton Rountree, Assistant Attorney General, for the State.*
*Robert S. Cahoon for defendants, appellants.*

PARKER, J. Defendant Wallace assigns as error that the Trial Court erred in imposing judgment of imprisonment upon him on his conviction of failing to heed a police siren while being in ample hearing distance of the police siren, as charged in the second warrant against him. Defendant Holder assigns as error that the Trial Court erred in imposing judgment of imprisonment upon him on his conviction of failing to heed a police siren while same was in reasonable distance to him, as charged in the second warrant against him.

Defendants have filed a joint brief. In their brief they contend in respect to these assignments of error that the judgments of imprisonment imposed upon them on their convictions on the second warrants should be arrested, for the reason that the second warrants utterly fail to charge any criminal offense. Defendants made no motion in arrest of judgment, according to the record. However, this Court has said in *S. v. Corl*, 250 N.C. 252, 108 S.E. 2d 613; "An appeal will be taken as an exception to the judgment and raises the question as to whether error in law appears upon the face of the record."

It is an essential of jurisdiction that a criminal offense shall be sufficiently charged in a warrant or an indictment. *S. v. Strickland*, 243 N.C. 100, 89 S.E. 2d 781; *S. v. Thorne*, 238 N.C. 392, 78 S.E. 2d 140; *S. v. Scott*, 237 N.C. 432, 75 S.E. 2d 154; *S. v. Morgan*, 226 N.C. 414, 38 S.E. 2d 166.

A court cannot properly give judgment in a criminal action, unless it appears in the record that a criminal offense is sufficiently charged. In the absence of a motion in arrest of judgment, it is the duty of this Court to examine the whole record, and if it sees that the judgment should have been arrested, it will, *ex mero motu*, direct it to be done. *S. v. Strickland, supra; S. v. Thorne, supra; S. v. Scott, supra; S. v. Watkins*, 101 N.C. 702, 8 S.E. 346.

The State contends that the second warrant against each defendant

charges all the constituent elements of G.S. 20-157(a), which reads as follows: "Upon the approach of any police or fire department vehicle giving audible signal by bell, siren or exhaust whistle, the driver of every other vehicle shall immediately drive the same to a position as near as possibe and parallel to the right hand edge or curb, clear of any intersection of highways, and shall stop and remain in such position unless otherwise directed by a police or traffic officer until the police or fire department vehicle shall have passed."

We do not agree with the contention of the State. The second warrant against each defendant does not charge that the defendant was the driver of any vehicle, and completely fails to aver the words of G.S. 20-157(a), either literally or substantially, or in equivalent words. Such being the case, the second warrant against each defendant utterly fails to charge a violation of G.S. 20-157(a).

The State makes no contention that the second warrants charge any violation of any city ordinance. It would seem that the second warrants were drawn on printed forms used in the Municipal-County Court, and the concluding words "and in violation of City Ordinance, Chapter , Section ." are mere surplusage, which should have been stricken out. See *S. v. Wilson,* 218 N.C. 769, 12 S.E. 2d 654. In our opinion, the second warrants charge no criminal offense. This Court, *ex mero motu,* orders the judgment on the second warrant as to each defendant be arrested. The legal effect of arresting the judgments is to vacate the verdicts and judgments of imprisonment on the second warrants below, and the State, if it is so advised, may proceed against the defendants for an alleged violation of G.S. 20-157(a) upon a sufficient warrant or indictment. *S. v. Strickland, supra; S. v. Faulkner,* 241 N.C. 609, 86 S.E. 2d 81; *S. v. Scott, supra; S. v. Sherrill,* 82 N.C. 694.

Each defendant has an assignment of error to the first warrant, similar to his assignment of error to the second warrant. While they made no motions in arrest of judgments of imprisonment imposed on their convictions on the first warrants, they contend in their joint brief that the judgments of imprisonment on the first warrants should be arrested, for the reason that while the first warrants charge the offenses in practically the precise words of G.S. 20-140, they then allege "in that he did . . .," and fail to allege explicit facts showing acts by the defendants in violation of G.S. 20-140. The first warrants charge the offense practically literally in the words of G.S. 20-140, (a), (b), and are sufficient. *S. v. Randolph,* 228 N.C. 228, 45 S.E. 2d 132; *S. v. Gregory,* 223 N.C. 415, 27 S.E. 2d 140; *S. v. Wilson, supra.*

Each defendant has an assignment of error to the third warrant, similar to his assignment of error to the second warrant. These as-

signments of error are not set out in their brief, and in support of them no reason or argument is stated or authority cited. They are taken as abandoned by defendants. Rule 28, Rules of Practice in the Supreme Court. 221 N.C. 544, 563; *S. v. Clayton, ante,* 261, 111 S.E. 2d 299.

Each defendant assigns as errors the denial by the trial court of his motions for judgments of nonsuit in each case against him renewed at the close of all the evidence. G.S. 15-173.

The State's evidence tends to show the following facts: About 9:00 p. m. o'clock on 18 May 1958 two officers of the city of Greensboro Police Department were on duty, and were sitting in a patrol car parked beside the Western Cafe in the vicinity of Spring Garden Street. One of the officers saw a 1955 Ford truck traveling east on Spring Garden Street at a speed of 40 to 45 miles an hour, where the speed limit for that area was 35 miles an hour. The officer driving the patrol car drove into Spring Garden Street, as the truck made a left turn into Copeland Street. The patrol car followed the truck. The truck swung around in the Richfield Service Station at the intersection of Spring Garden and Copeland Streets, and was directly facing the patrol car. The officer drove the patrol car up facing the truck, turned on the red light on top of the patrol car, got out, and started walking to the truck. Whereupon, the driver of the truck put it in reverse, backed up, and entered Spring Garden Street traveling east at a high rate of speed. The officer jumped back in the patrol car and with the red light flashing on the patrol car and the siren sounding, pursued the truck. The truck continued east on Spring Garden Street, reaching a speed of about 75 to 80 miles an hour. The truck ran through a red light on Spring Garden Street, where it intersects Oakland Avenue. The truck turned left on to Park Terrace, proceeded down Masonic Drive, turned left into Cliffside Terrace, and came all the way back up to Spring Garden Street. The truck went a short distance west on Spring Garden Street, and turned left into Pinecroft Road, and continued south on Pinecroft Road to about 250 yards from the High Point Road, where the officer stopped the truck. The truck ran through a stop sign at the intersection of Cliffside Terrace and Oakland Avenue; it ran through another stop sign at Collier's Drive and Spring Garden Street. The truck entered Pinecroft Road at a very high rate of speed, completely on the wrong side of the center division of the intersection, and continued on the wrong side until stopped. The maximum speed limit through the area of pursuit is 35 miles an hour. Pincroft Road along the path of pursuit is completely residential, except for two service stations. Along Pinecroft Road the truck was operated at a speed of about 75 miles an hour.

The pursuit covered a distance of around two and one-half miles, and lasted three to four minutes. During the entire time of the pursuit the red light on the patrol car was blinking, and its siren was sounding. The truck was stopped by the patrol car bumping it twice from behind, hooking bumpers with it, and stopping.

The driver of the patrol car, when the truck was stopped, got out and went to the left side of the truck. Defendant Holder was sitting under the wheel, next to him was one Doss, and next to him was defendant Wallace. Then and there defendant Wallace said he was the owner of the truck, and in reply to an officer's question why they ran, he replied, "the panic was on," saying that several times.

Officer John Barham went to the scene, and brought defendants to the Police Department. He asked defendant Holder what made him run from the police officers. Holder replied, "if he had ever gotten on the Red Road that they would never have caught him." Defendant Holder told Officer Barham he was driving the truck.

Defendant Holder told Sergeant S. N. Ford of the Greensboro Police Department that he tried to outrun the officers, and defendant Wallace did not say anything to him about stopping the truck or to stop driving in the manner he was driving, until the police car started gaining on them at Pinecroft Driving Range, which is about 300 to 350 yards from the High Point Road, where the truck stopped. Defendant Wallace told Sergeant Ford that the truck was his. Sergeant Ford asked defendant Wallace why he did not stop the truck. Defendant Wallace replied: "He did not try to stop it, and did not tell him to stop it, until the police car started gaining on him on the Pinecroft Road, and he saw they were going to catch him or hit him, and he told him to stop it, and that was when the police car hit him, and he did stop the truck."

Defendant Wallace contends that all the evidence shows he was not driving the truck, and "that the owner of a truck is not vicariously liable for the acts of the driver in a criminal action." The State's evidence tends to show that defendant Wallace told Sergeant S. N. Ford of the Greensboro Police Department "the truck was his"; it further tends to show that defendant Wallace was riding in the truck on the seat with its driver the defendant Holder during the entire time of its pursuit by the police car, and it further tends to show that defendant Wallace told Sergeant S. N. Ford, "that he (Wallace) did not try to stop it, and did not tell him to stop it, until the police car started gaining on him on the Pinecroft Road, and he saw they were going to catch him or hit him, and he told him to stop it, and that was when the police car hit him, and he did stop the truck." Such evidence on the part of the State permits the jury to draw the

fair inference that defendant Wallace, as owner, had the right to con-
trol the operation of the truck, was controlling its operation, and that
he aided and abetted defendant Holder in the commission of the
offenses alleged in the first and third warrants against him, and is
sufficient to require the submission to the jury of the cases against
defendant Wallace which are alleged in the first and third warrants,
because all who participate in the commission of a misdemeanor, as
aiders and abettors, are guilty as principals. *S. v. Gibbs*, 227 N.C.
677, 44 S.E. 2d 201; *Story v. U. S.*, 16 F. 2d 342, 53 A.L.R. 246, cert.
denied, 274 U.S 739, 71 L. Ed. 1318. See *S. v. Trott*, 190 N.C. 674, 130
S.E. 627. We do not consider the motions for judgments of nonsuit
as to the second warrants, because the second warrants charge no
criminal offense.

Both defendants contend that the offenses charged against them
in the first and third warrants should have been nonsuited, for the
reason that the first warrants charge that the reckless driving of the
Ford Truck was "upon Pinecroft Road at High Point Road, Greens-
boro, North Carolina," and that the third warrants charge that the
driving of the Ford Truck at a speed of 80 miles an hour in a 35-
miles-an-hour residential district was "on Pinecroft Road at High
Point Road, Greensboro, North Carolina," and while the State's evi-
dence shows that the Ford Truck was operated on Pinecroft Road,
it further shows that it was stopped by the police on Pinecroft Road
250 yards from the High Point Road, and, therefore, there is a fatal
variance between the averments of the warrants and the evidence of
the State.

This Court said in *Waynesville v. Satterthwait*, 136 N.C. 226, 48
S.E. 661: "The word 'at,' when used to designate a place, may, and
often must mean, 'near to.' It is less definite than 'in' or 'on'; at the
house may be in or near the house. Web. Inter. Dic., 95; Cent. Dic.,
Vol. I." See also *Purifoy v. R. R.*, 108 N.C. 100, 12 S.E. 741; 7 C.J.
S., At, Place, pp. 153-155.

The Trial Court properly overruled each defendant's motions for
judgments of nonsuit in respect to the offenses charged in the first and
third warrants.

The court charged the jury that the defendants are charged with
three offenses: one of speeding in excess of 35 miles an hour in a 35-
mile zone, two, of reckless driving, and three, of failing to heed a
siren of a police car.

Immediately thereafter the Judge charged as follows, which is as-
signed by defendants as error: "Now, members of the jury, the Court
charges you that under the evidence as to the defendant Holder, that
this evidence points conclusively to the fact that the motor vehicle

on this occasion was being driven in violation of those laws, but that you must be satisfied beyond a reasonable doubt that the defendant Holder was doing the driving on this occasion."

This assignment of error is sustained. This Court said in *S. v. Owenby*, 226 N.C. 521, 39 S.E. 2d 378: "Nor is it permissible for the Judge in charging the jury or at any time during the trial, to intimate whether a material fact has been fully or sufficiently established, it being the true office and province of the jury to weigh the testimony and to decide upon its adequacy to prove any issuable fact." See also the multitude of other cases appearing in the Code Annotation to G.S. 1-180.

For error in the charge, the defendants are entitled to a new trial on the first and third warrants.

New trial on first and third warrants.

Judgment arrested on second warrant.