IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HAROLD DANIELS, | § | |
| | § | No. 531, 2019 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court of |
| | § | the State of Delaware |
| v. | § | |
| | § | ID No. 1812013402(N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: November 18, 2020
Decided: January 26, 2021

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

Upon appeal from the Superior Court. **REVERSED** and **REMANDED**.

Benjamin S. Gifford IV, Esq., THE LAW OFFICE OF BENJAMIN S. GIFFORD IV, Wilmington, Delaware, *for Appellant, Harold Daniels*.

Carolyn S. Hake, Esq., DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, *for Appellee, the State of Delaware*.

**TRAYNOR**, Justice:

After Harold Daniels pleaded guilty to driving under the influence of alcohol, the Superior Court sentenced him to a mandatory term of imprisonment as a third-time offender under 21 *Del. C*. § 4177(d)(3). The court based its finding that Daniels had committed two prior offenses in part on its determination that Daniels had been convicted in New Jersey in 2012 under a statute that was "similar" to Delaware's driving-under-the-influence statute. In this appeal, Daniels argues that, because the New Jersey statute under which he was convicted prohibits conduct that is not against the law in Delaware—permitting another person to operate a vehicle while under the influence—the Superior Court erred by counting the New Jersey conviction against him. For the reasons that follow, we agree with Daniels and therefore vacate his sentence.

## I.

The facts surrounding Daniels' arrest in December 2018 for driving under the influence of alcohol are not germane to this appeal. It suffices to understand that Daniels pleaded guilty to that charge, after which the State moved the Superior Court to sentence him as a third-time offender. Under Section 4177(d)(3), a third offense DUI is a Class G felony punishable by up to two years in prison, three months of which may not be suspended, and a fine of up to $5,000. By contrast, first offenders are subject to a fine of not less than $500 nor more than $1,500 and a prison sentence,

which may be suspended, of up to 12 months.[1]  Section 4177B defines "prior or previous conviction" as "[a] conviction or other adjudication of guilt . . . under § 4175(b) or § 4177 . . . or a similar statute of any state or local jurisdiction . . . ."[2]

In support of its motion, the State submitted certified copies of two convictions:  (1) a 2000 conviction in Delaware for reckless driving (alcohol related), in violation of 21 *Del. C.* § 4175(b), and (2) a 2012 conviction in New Jersey under N.J. Stat. Ann. § 39:4-50 ("N.J. § 39:4-50"), a statute that is entitled "Driving while intoxicated."  Daniels responded that the court should not consider the New Jersey conviction because the New Jersey statute he was found to have violated in 2012 is "significantly broader in scope than Section[] . . . 4177,"[3] punishing conduct—permitting another person to drive under the influence—"that is not criminalized in Delaware."[4]  According to Daniels, for his conviction under

---

[1] We do not recite the penalties applicable to second offenses because it would appear that Daniels' conviction should be treated either as a first offense or a third offense.  If Daniels' 2012 New Jersey conviction is counted as a prior conviction, then the offense for which the Superior Court sentenced him here is a third offense.  If it is not, although the offense here would be Daniels' third offense during his lifetime and second offense in Delaware, it would be a first offense for sentencing under Section 4177 because his actual first offense occurred more than 10 years before the instant offense.  *See* 21 *Del. C.* § 4177(d)(2) ("For a second offense *occurring at any time within 10 years of a prior offense*, [the offender shall] be fined not less than $750 nor more than $2,500 and imprisoned not less than 60 days nor more than 18 months." (emphasis added)).

[2] 21 *Del. C.* § 4177B(e)(1)(a).  This section counts convictions under Section 4175(b) (reckless driving-alcohol related) and Section 4177 (driving while under the influence) as prior convictions.  Because the State does not contend that Daniels' New Jersey conviction was under a statute similar to Section 4175(b), henceforth we will confine our analysis to whether the New Jersey statute is "similar" to Section 4177.

[3] App. to Opening Br. at A48.

[4] *Id.*

3

the New Jersey statute to qualify as a prior offense under a statute "similar" to Section 4177, the State was required to provide enough information that would enable the Superior Court to determine that he had been convicted of driving—and not permitting another to drive—under the influence; the State readily conceded that it was unable to do so.[5]

The Superior Court was unpersuaded by Daniel's argument for two reasons. First, the court selected a dictionary definition of "similar," to-wit: "nearly corresponding; resembling in many respects; having a general likeness, although allowing for some degree of difference,"[6] and found that N.J. § 39:4-50 fit the bill. Second, the court found that the purported difference in the New Jersey statute was "truly illusory" because, "it would seem Delaware's DUI and accomplice liability statutes would operate in the same manner as New Jersey's express provision"[7] that punishes persons who permit others to drive under the influence. Thus, the Superior Court granted the State's motion and sentenced Daniels as a third-time offender to

---

[5] During supplemental briefing below and on appeal, the State has argued that, even though it was unable to produce *Shepard* documents to prove the part of the New Jersey DUI statute under which Daniels was convicted, Daniels could still be sentenced as a third-time offender because Daniels' participation in a rehabilitation program following his 2012 New Jersey conviction constituted a prior conviction under Section 4177B(e)(1)(c). Because we determine that the New Jersey and Delaware statutes are not similar, Daniels' participation in a rehabilitation program cannot constitute a prior offense as Section 4177B(e)(1)(c) requires that such participation must occur under a statute similar to the Delaware DUI statute.

[6] *State v. Daniels*, 2019 WL 6869071, at *3 (Del. Super. Ct. Nov. 13, 2019) *as modified* (Dec. 16, 2019) (quoting Black's Law Dictionary 1240 (6th ed. 1990)).

[7] *Id.* at *4.

4

two years of Level V incarceration, to be suspended after Daniels serves three months for one year of Level IV probation. This appeal followed.

## II.

We address questions of statutory interpretation *de novo* because they include questions of law.[8]

## III.

### A.

We begin our consideration of whether the New Jersey statute is sufficiently similar to Section 4177 such that a conviction under it qualifies as a prior DUI offense for sentencing purposes by comparing the text of the two statutes.

Under Section 4177,

(a) No person shall drive a vehicle:
  (1) When the person is under the influence of alcohol;
  (2) When the person is under the influence of any drug;
  (3) When the person is under the influence of a combination of alcohol and any drug;
  (4) When the person's alcohol concentration is .08 or more; or
  (5) When the person's alcohol concentration is, within 4 hours after the time of driving .08 or more.[9]

Under the New Jersey statute, a person may be convicted if he or she:

> operates a motor vehicle while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-

---

[8] *Sheehan v. Oblates of St. Francis de Sales*, 15 A.3d 1247, 1257 (Del. 2011); *see also Sammons v. State*, 68 A.3d 192, 194 (Del. 2013) ("Whether a crime from another jurisdiction is the equivalent to a particular crime under the Delaware code is a question of law to be reviewed *de novo*.").

[9] 21 *Del. C.* § 4177(a).

producing drug, or operates a motor vehicle with a blood alcohol concentration of 0.08% or more by weight of alcohol in the defendant's blood *or permits another person who is under the influence* of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug *to operate a motor vehicle the person owns or which is in the person's custody or control or permits another to operate a motor vehicle with a blood alcohol concentration of 0.08% or more by weight of alcohol in the defendant's blood* . . . .[10]

One is struck by an obvious—and important—difference between these two statutes. While they both prohibit driving a vehicle while under the influence, N.J. § 39:4-50 has a broader reach than Section 4177. In particular, the New Jersey statute imposes penalties on persons who "permit[] another person who is under the influence of intoxicating liquor . . . [or drugs] to operate a motor vehicle the person owns or which is in the person's custody or control;"[11] the Delaware statute has no corresponding provision. In the Superior Court, Daniels seized upon this difference, a line of United States Supreme Court cases construing the Armed Career Criminal Act (the "ACCA"), and our recent order in *Valentine v. State*,[12] and argued that, to invoke his 2012 conviction under N.J. § 39:4-50 for the purpose of enhancing his sentence, the State was required to demonstrate that he had been convicted under the part of the statute that was similar to Section 4177, and not under the part that was different.

---

[10] N.J. STAT. ANN. § 39:4-50(a) (emphasis added).
[11] *Id.*
[12] 207 A.2d 166, 2019 WL 1178765 (Del. 2019) (TABLE).

B.

As background for our discussion of Daniels' argument—and the Superior Court's rejection of it—we interpose here a brief discussion of *Valentine* and its federal antecedents. In *Valentine*, we were tasked with determining whether the defendant could be sentenced as a repeat offender under Delaware's possession-of-a-firearm-by-a-prohibited-person ("PFBPP") statute[13] based on two prior felony convictions under two Pennsylvania statutes. We determined that neither Pennsylvania conviction resulted under a statute that was "'the same as or equivalent to' a Delaware violent felony statute,"[14] a prerequisite for enhanced sentencing under the PFBPP statute. In reaching that conclusion, we looked to United States Supreme Court precedent that analyzed whether a prior conviction in a foreign jurisdiction qualifies as a prior offense for the purpose of enhancing a defendant's sentence under the ACCA.[15]

The ACCA imposes a mandatory minimum sentence of 15 years for offenders who have three prior convictions "for a violent felony or a serious drug offense."[16] The ACCA defines a "violent felony" as using or threatening the use of physical force against another person but it also includes "burglary, arson, or extortion."[17]

---

[13] *See* 11 *Del. C.* § 1448(e)(1)(c).
[14] *Valentine*, 2019 WL 1178765, at *1.
[15] The ACCA is the federal analog of Delaware's PFBPP statute.
[16] 18 U.S.C. § 924(e) (2018).
[17] *Id.*

Where the prior conviction is "burglary, arson, or extortion," the United States Supreme Court has instructed that the sentencing court should refer to the definition of the "'generic' crime—*i.e.*, the offense as commonly understood"[18] to determine whether the prior conviction may be counted for the purposes of enhancing the defendant's sentence.

In *Mathis v. United States*,[19] the Supreme Court clarified the two approaches a sentencing court may use to compare a foreign statute with the "generic" crimes listed in the ACCA. The first approach, the "categorical approach," is to be used "when a statute sets out a single (or 'indivisible') set of elements to define a single crime," excluding any consideration of the facts of the case.[20] Under this approach, if the elements of the statute under which the defendant was convicted match one of the generic offenses listed (*i.e.*, burglary, arson, or extortion), then the prior conviction may serve as an ACCA predicate for the imposition of an enhanced sentence. On the other hand, the "modified categorical approach" is to be used when the statute has "a more complicated (sometimes called 'divisible') structure . . . list[ing] elements in the alternative, and thereby defin[ing] multiple crimes."[21] Under the "modified categorical approach," a sentencing court may look to *Shepard*

---

[18] *Descamps v. United States*, 570 U.S. 254, 257 (2013).
[19] *Mathis v. United States*, 136 S. Ct. 2243 (2016).
[20] *Id.* at 2248–49.
[21] *Id.* at 2248.

documents, which are "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of."[22]

Following this guidance, we employed the "modified categorical approach" in *Valentine* and determined that one of the defendant's Pennsylvania convictions resulted under a statute that, in addition to criminalizing behavior also prohibited in Delaware—specifically, carrying a concealed weapon without a license—the Pennsylvania statute also criminalized behavior not prohibited in Delaware—specifically, possessing a firearm in a vehicle if that firearm is not concealed. Because the *Shepard* documents presented at sentencing did not indicate the part of the Pennsylvania statute under which the defendant was convicted, we reversed the defendant's enhanced sentencing under the PFBPP statute.

Despite the fact that N.J. § 39:4-50 appears to include alternative offense elements—operating a vehicle, on the one hand, and permitting another to do so, on the other—and that the record of Daniels' conviction does not disclose under which one he was convicted, the Superior Court eschewed the "modified categorical approach." The court reasoned that, because PFBPP sentences are enhanced only if the defendant has a prior conviction for an offense that is "the same as or equivalent

---

[22] *Id.* at 2249 (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005); *Taylor v. United States*, 495 U.S. 575, 602 (1990)).

to"[23] a Delaware violent felony and because Section 4177B(e)(1)'s enhancement provisions only require convictions under statutes "similar" to Section 4177, the court need not determine which alternative offense underlay the prior conviction. For the Superior Court, if the statute under which Daniels was convicted in New Jersey bore "a general likeness" to Delaware's DUI statutes "with 'some degree of difference allowed,'"[24] the question of whether Daniels was convicted of the alternative offense that is not an offense under Section 4177 need not be answered.

## C.

We disagree with the Superior Court's interpretation of Section 4177B(e)(1)'s definition of "[p]rior or previous conviction or offense." Although the court quite rightly sought to derive the commonly accepted meaning of "similar" by consulting frequently cited dictionaries, it did not, in our view, take sufficient heed of the context in which the elusive word is used. To be sure, dictionary definitions are helpful. But "dictionaries may also reveal a linguistic pluralism . . . [that is], a word [can have] a broad range of possible meanings."[25] And this is true of "similar," as noted by the very edition of Black's Law Dictionary upon which the Superior Court relied for its definition. "'[S]imilar,'" Black's warns, "may mean identical or exactly

---

[23] 11 *Del. C.* § 1448(e)(3).

[24] *Daniels*, 2019 WL 6869071, at *4.

[25] William N. Eskridge Jr., *Interpreting Law A Primer on How to Read Statutes and the Constitution* 59 (2016).

10

alike. It is a word with different meanings depending on [the] context in which it is used."[26] In this instance, we believe that the context that gives meaning to the word "similar" weighs in favor of defining it as "alike in substance or essentials."[27]

In reaching this conclusion, we look to the purpose underlying Delaware's driving-under-the-influence statutory scheme as "an essential element of context that gives meaning to its words."[28] The evident purpose of what the driving-under-the-influence statutes seek to achieve is the prohibition and punishment of those who drive—defined as "driving, operating, or having actual physical control of a vehicle"[29]—while under the influence of alcohol or drugs. Section 4177 does not by its terms prohibit permitting another to drive under the influence and, to the extent a statute, such as New Jersey statute in question here, criminalizes that conduct, (and, to be clear, only to that extent), it is not similar to Section 4177.

This is not to say that a prior conviction under N.J. § 39:4-50 can never qualify as a "prior or previous conviction" under Section 4177B. Indeed, its prohibition of "operat[ing] a motor vehicle while under the influence of intoxicating liquor [or drugs]" addresses similar conduct as does Section 4177, which states that "[n]o person shall drive a vehicle . . . when the person is under the influence of alcohol . .

---

[26] Black's Law Dictionary 1383 (6th ed. 1990); *see also* Black's Law Dictionary 1240 (5th ed. 1979).
[27] Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/similar (last visited Jan. 21, 2021).
[28] Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 20 (2012).
[29] 11 *Del. C.* § 4177(c)(5).

. any drug . . . any combination of alcohol and any drug."[30] Moreover, statutes from other jurisdictions that might describe the offense of driving under the influence differently or establish different evidentiary standards applicable to the offense might still qualify as similar so long as the offense of conviction is similar to driving under the influence as defined in Section 4177.[31] But where, as here, the prior conviction is under a statute that is divisible into conduct that violates Section 4177 and conduct that doesn't, the sentencing court must determine, with the benefit of *Shepard* documents, if necessary, whether the prior conviction was under the section of the statute that is similar to Section 4177.

## D.

We turn next to the Superior Court's determination that the apparent dissimilarity of at least a portion of N.J. § 39:4-50 is "truly illusory." This conclusion rests on the premise that theoretically—for there are no Delaware precedents or examples of prosecutions to support it—"it would seem Delaware's DUI and accomplice liability statutes would operate in the same manner as New

---

[30] 11 *Del. C.* § 4177(a).

[31] Our decision is consistent with *Stewart v. State*, where we held that a comparative analysis of the Delaware statute and the statute under which a prior conviction rests, "without reference to the facts and circumstances underlying the [prior] conviction" will suffice to determine similarity. 930 A.2d 923, 926 (Del. 2007); *see also State v. Rogers*, 2001 WL 1398583 (Del. Super. Ct. Oct. 9, 2001), *aff'd*, 798 A.2d 1042, 2002 WL 1058160 (Del. May 22, 2002) (TABLE). Neither *Stewart* nor *Rogers* involved a prior conviction under a statute that punished conduct that is not an offense under Section 4177.

Jersey's express provision"[32] that punishes persons who knowingly permit others to drive under the influence. We are not persuaded by the Superior Court's supposition for two reasons.

First, Delaware's accomplice-liability statute, found at 11 *Del. C.* § 271, appears to require more active conduct on the part of an accomplice than the passive permission that will support a conviction under N.J. § 39-4:50. The Superior Court did not explain—and we do not see—how permitting a person to engage in conduct falls with any of the pertinent subsections of Section 271.[33]

---

[32] *Daniels*, 2019 WL 6869071, at *4. Daniels claims that it was error for the Superior Court to consider the issue of accomplice liability *sua sponte* and without giving the parties an opportunity to brief the issue. Our ruling renders consideration of the procedural issue unnecessary. But we do not see the State's failure to make this argument as entirely irrelevant. Put another way, that it did not occur to the Delaware Department of Justice that a person could be prosecuted in Delaware for aiding and abetting a motor vehicle violation—even a very serious one—casts some measure of doubt on the court's theoretical speculation.

[33] 11 *Del. C.* § 271 states:

> A person is guilty of an offense committed by another person when:
> (1) Acting with the state of mind that is sufficient for commission of the offense, the person causes an innocent or irresponsible person to engage in conduct constituting the offense; or
> (2) Intending to promote or facilitate the commission of the offense the person:
>     a. Solicits, requests, commands, importunes or otherwise attempts to cause the other person to commit it; or
>     b. Aids, counsels or agrees or attempts to aid the other person in planning or committing it; or
>     c. Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so; or
> (3) The person's conduct is expressly declared by this Criminal Code or another statute to establish the person's complicity.
> Nothing in this section shall apply to any law-enforcement officer or the officer's agent while acting in the lawful performance of duty.

13

Second, the cases the Superior Court cited in support of its accomplice-liability driving-under-the-influence theory are of questionable utility. As an initial matter, all of the cases cited by the Superior Court involve driving-under-the-influence charges where an accident occurred and two occupants of the car—a driver and a passenger—are both intoxicated.[34] And in four of them, it was unclear whether the defendant was driving or riding as a passenger when the accident occurred.[35]

In *Venable v. State*,[36] the defendant and an acquaintance he had recently met at a tavern were involved in a car accident. Although it was unclear who was driving at the time of the accident, upon arrival at the scene, the arresting officer found the defendant behind the wheel attempting to drive the vehicle out of a ditch. To be sure, the court held that either of two alternative findings of the trial court—one that the defendant was driving and the other that he had allowed his friend, who the defendant knew was under the influence, to drive—were sufficient to sustain the defendant's driving-under-the-influence conviction. But a closer look at *Venable*, decided in 1965, does not inspire confidence in its current vitality. For one thing, the *Venable* reasoning rests on a 1940 case, *Brewer v. State*,[37] that did not find that

---

[34] *See State v. Satern*, 516 N.W.2d 839, 840 (Iowa 1994); *State v. Lemacks*, 996 S.W.2d 166, 167 (Tenn. 1999); *Venable v. State*, 397 S.W.2d 231, 232 (Tex. Crim. App. 1965); *State v. Millette*, 795 A.2d 1182, 1183 (Vt. 2002); *Taylor v. State*, 83 So.2d 879, 880 (Fla. 1955).
[35] *See Satern*, 516 N.W.2d at 840; *Lemacks*, 996 S.W.2d at 168; *Venable*, 397 S.W.2d at 232; *Taylor*, 83 So.2d at 880.
[36] 397 S.W.2d 231.
[37] 143 S.W.2d 599 (Tex. Crim. App. 1940).

14

a person could be convicted of driving under the influence under an accomplice-liability theory. Rather, *Brewer* involved the prosecution of an automobile owner for murder of a five-month-old baby. The relevant holding is found in a sentence of Faulknerian length:

> If the appellant has advised and agreed to all the acts and conduct of a companion whom he has placed in charge of his car and acts with him for hours, as in the instant case, in recklessly driving upon the streets and public highways in an intoxicated condition, where it may be known that the driver of the car is incapable of judicious control and the owner who places it in his hands continues with him and permits him to use it while in that condition, watches him make one reckless drive after another, as the record discloses in this case, crashing into other automobiles, a cattle-guard, into and across ditches, and repeatedly acts without judgment or discretion and without regard for the rights of other, it would seem that there would be no difficulty in concluding that he is responsible as a principal for whatever might result therefrom, provided it could have been reasonably anticipated as a result.[38]

This describes much more egregious conduct than would expose a person to prosecution under the Superior Court's application of accomplice liability to motor vehicle offenses. We also are not certain that *Brewer*'s holding sits comfortably with the circumstances presented in *Venable*. And our skepticism of *Venable* is only heightened by the fact that we cannot find, in the 55 years since its publication,

---

[38] *Id.* at 601.

any Texas case that has cited it for the proposition adopted by the Superior Court here.[39]

Likewise, we are not prepared to rely on *State v. Millette*[40] to extend accomplice liability to driving-under-the-influence charges. It is true that, in *Millette*, the defendant was charged with aiding in the commission of a DUI. But that is not instructive here because Vermont's motor vehicle code, unlike Delaware's, "establishes criminal liability for one who 'aids, abets, induces, procures, or causes' the commission of a motor vehicle felony or misdemeanor, creating accomplice liability for these acts."[41]

Admittedly, in *State v. Lemacks*,[42] another case in which it was unclear who was driving at the time of an automobile accident, the Tennessee Supreme Court reviewed—and did not overturn—the defendant's driving-under-the-influence conviction, after the prosecution had presented alternative theories of liability. But the issues before the court (jury unanimity, sufficiency of the evidence, sufficiency of the description of the charged offense in the indictment) did not relate to the validity of the prosecution's theory.

---

[39] In fact, *Venable* has not been cited with approval by any court—other than the Superior Court—for the proposition adopted by the court in this case.

[40] 795 A.2d 1182.

[41] *Id.* at 1183.

[42] 996 S.W.2d 166.

In the two other cases where the driver at the time of the accident was unknown, an occupant in another car involved in the accident was killed. In *State v. Satern,*[43] the Iowa Supreme Court determined that the state's criminal code specifically permitted a finding of vicarious liability for drunk driving that results in vehicular homicide. The court "perceive[d] no meaningful distinction between imposing criminal liability for an unintended death or injury resulting from drunk driving, and imposing criminal consequences for unintended deaths that occur in furtherance of other criminal behavior."[44] In *State v. Taylor*, the Florida Supreme Court observed that, in a manslaughter prosecution, it was proper to find criminal liability where "'the owner of . . . an automobile knowingly puts that instrumentality in the immediate control of a careless and reckless driver, sits by his side, and permits him without protest so recklessly and negligently to operate the car as to cause the death of another.'"[45] We see both of these cases as presenting a straightforward application of the theory of accomplice liability to serious violent crimes as defined in the states' respective criminal codes. They do not, however, persuade us that our state has—or would in an appropriate case—impose criminal liability on a person who merely permits a person to drive while under the influence.

---

[43] 516 N.W.2d 839.
[44] *Id.* at 842–43.
[45] *Taylor*, 83 So.2d at 880 (quoting *Story v. United States*, 16 F.2d 342, 344 (D.C. Cir. 1926)).

Third, the Superior Court's conjecture that under Delaware law individuals who permit their vehicles to be driven by intoxicated persons are guilty themselves of driving under the influence has potentially far-reaching—and likely unintended—ramifications. For instance, might the Superior Court's extension of accomplice liability extend to other motor vehicle offenses? Will a mother face criminal penalties when she permits her absent-minded teenager to drive her car when the teenager drives carelessly? Is a kind-hearted friend responsible for the speeding tickets of his lead-footed companion to whom he lends his car? Although at first blush these scenarios may seem far-fetched, we see no reason why the extension of accomplice liability to motor vehicle offenses as posited by the Superior Court, without some limiting principle, could not lead to such unusual results.[46]

E.

Finally, we address the Superior Court's concern that it "would frustrate the application of Delaware's recidivist statute . . . if [a] recidivist [could] just point to any elemental difference on the outer edges of the other state's substantive DUI statute and compel proof that [that] elemental difference played no part in his or her prior convictions."[47] This is so, according to the court, because many states consider

---

[46] These examples also illustrate that positing a novel theory of criminal liability in a case where it is neither squarely at issue nor argued by the parties is a fraught exercise; indeed, for that reason, we do not speak definitively on it here.

[47] *Daniels*, 2019 WL 6869071, at *5.

first offenses that do not result in an accident or injury as low-level offenses that are often adjudicated in municipal and magistrate courts. These courts "will often lack procedures and formalities present in most criminal prosecutions that would generate even the limited class of *Shepard* documents . . . that a Court might need to resort to."[48] Although the Superior Court's disquiet is perhaps understandable, it must, in our view, give way to considerations of faithfulness to the statute and fairness to the defendant.

IV.

WE REVERSE the Superior Court's determination that Daniels' 2012 New Jersey conviction under N.J. § 39:4-50 is a "prior or previous conviction" for sentencing purposes under Section 4177(d)(3), VACATE its December 16 corrected sentencing order, and REMAND for resentencing consistent with this opinion.

---

[48] *Id*. The absence of *Shepard* documents will, as we understand the Superior Court's concern, unfairly inure to the benefit of repeat DUI offenders.

19