STATE OF IOWA, Appellee, v. A. J. STORMS, Appellant.

No. 46216.

JUNE 15, 1943.

M. G. Kellam, of Greenfield, and Healey & Reynolds, of Creston, for appellant.

John M. Rankin, Attorney General, Don Hise, Assistant Attorney General, and J. E. Don Carlos, County Attorney, for appellee.

GARFIELD, C. J.—The indictment charges defendant, A. J. Storms, with the crime of operating a motor vehicle while intoxicated, in violation of section 5022.02, Code, 1939, in that he caused William Gillispie, while intoxicated, to operate a motor vehicle owned by Storms. There is no claim that defendant was intoxicated nor that he drove the car. Defendant was prosecuted because of Code section 12895, providing that:

"* * * all persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense, or aid and abet its commission, though not present, must hereafter be indicted, tried, and punished as principals."

Defendant does not argue that the crime of "drunken driving" cannot be committed by one who does not drive but merely aids and abets an intoxicated driver. This court held in State v. Myers, 207 Iowa 555, 223 N. W. 166, that the crime may be so committed.

I. Defendant first challenges the sufficiency of the evidence to sustain his conviction as an aider and abettor.

Defendant was engaged in the seed business in Creston. His son Homer was a partner and general manager of the business. About five p. m. on May 18, 1942, defendant and William Gillispie got in an automobile owned by defendant. Gillispie drove. They went from Creston into the country and looked at eight or ten pastures, with the thought of purchasing grass seed. About eight o'clock they came to Greenfield, parked the car, and entered a café together. Storms ordered supper for them both and they ate together at the same table. About an hour later they left the café. Defendant was first to enter the car and sat on the right side of the front seat. Gillispie got in the driver's seat on the left and drove away. The sheriff and his deputy followed the car, stopped it after it had traveled a few blocks, and arrested Gillispie for drunken driving.

Although defendant denied that Gillispie was intoxicated, there is ample evidence to support such a finding. He staggered,

"he was weaving," his face was flushed, his breath smelled of liquor, a pint bottle with about an inch of whisky in it was *sticking out of a pocket* in his overalls. He was seen to stagger a little when he walked into the café. The jury could also properly have found that defendant, notwithstanding his denial, must have known and did know of the drunken condition of Gillispie.

But, defendant argues, mere knowledge, by one who is present, of the commission of a crime by another, or even negative acquiescence therein, is insufficient to constitute aiding and abetting—there must be some affirmative act of participation or advising or encouraging it. Although a defendant's presence may under some circumstances constitute an aiding and abetting (see State v. Farris, 189 Iowa 505, 510, 178 N. W. 361; State v. Dunn, 116 Iowa 219, 226, 89 N. W. 984), generally, the law is as defendant contends. State v. Bosworth, 170 Iowa 329, 345, 152 N. W. 581; State v. Bartlett, 128 Iowa 518, 520, 105 N. W. 59; State v. Farr, 33 Iowa 553, 561; 22 C. J. S. 158, 159, section 88b(1); 14 Am. Jur. 840, 841, section 110.

Even so, we think the evidence was sufficient to support the charge of aiding and abetting. Three peace officers testified that defendant said, in substance, following the driver's arrest, that Gillispie was driving his car for him, that he had Gillispie drive his car while he (defendant) was buying grass seed. Defendant's act in seating himself in the right front seat of the car when the men left the café is evidence that he at least impliedly invited Gillispie to occupy the driver's seat. The jury could have found the two were engaged in a joint venture and that Storms, knowing Gillispie was intoxicated, encouraged him to drive.

II. Instruction 10 states that "to aid and abet" means *to assent to an act,* or to lend to it countenance and approval, either by active participation in it or by in some manner advising or encouraging it. Defendant specially complains of the italicized words. Even assuming, as defendant contends, that mere assent to an act does not amount to aiding and abetting, the instruction is correct. The final clause, "by active participation in it or by in some manner advising or

encouraging it," amplifies the italicized words and describes the kind of assent necessary to constitute aiding and abetting. The quoted language does not, as defendant argues, refer merely to the clause immediately preceding it, "to lend to it countenance and approval." Almost the identical language has been approved in State v. Davis, 191 Iowa 720, 726, 183 N. W. 314, and State v. Wilbourn, 219 Iowa 120, 125, 126, 257 N. W. 571.

Instruction 10 required the jury to find, in order to convict, that the car in question was owned by Storms. It is argued that it was immaterial who owned the car and the jury should have been so instructed. But if this be true, this portion of the instruction was not prejudicial to defendant in requiring proof by the State of an immaterial matter. We may add that the ownership of the car was not disputed. Defendant fully admitted he was the owner.

III. Defendant's remaining claim to a reversal is that the court unduly limited the direct examination of defendant and his son Homer. The court sustained as immaterial objections by the State to defendant's offers to prove by these witnesses that Gillispie was a general field agent of the partnership engaged in the seed business; that defendant had no voice in the management of the business or the hiring or direction of employees as to their work; that Homer Storms, manager in active charge of the business, directed Gillispie prior to the trip in question to go out and inspect the pastures which were prospective seed plots; that Gillispie was authorized by the firm to use any of its three cars or defendant's car, and such was the custom of the employees; that the firm used defendant's car in its business and paid all expenses of upkeep and operation; that the use of defendant's car on May 18th was under the direction of the manager and not the defendant; that defendant went on the trip at Gillispie's invitation merely for the ride and had no control over the manner of driving.

Defendant did testify without objection that when he told the peace officers Gillispie was driving for him he meant he was driving for the partnership. The court held the following questions asked defendant were immaterial:

"Q. Do you know of your own knowledge how he [Gil-

lispie] happened to take your car? Q. You may state whether or not it was under your directions that he took your car? [A negative answer to this question was stricken.] Q. And at that time * * * for whom was he working? Q. Was he an employee of the Storms Seed Co. * * *?''

We think most of this offered evidence was proper and material as bearing on the vital question whether defendant was an aider and abettor, and that the court committed prejudicial error in rejecting it. It tended to prove that Gillispie was not in fact driving for defendant, as the State's witnesses testified Storms told them on the evening in question.

The vital instruction 10 told the jury to find defendant guilty if it found beyond a reasonable doubt that (1) the car was owned by defendant and (2) driven by Gillispie on the public highways at the time and place charged (3) defendant was riding in the car at the time and knew that Gillispie was intoxicated and (4) permitted Gillispie to continue to drive as his driver. Under the instruction, a failure so to find entitled defendant to an acquittal. The offered testimony tended to prove that Gillispie was not defendant's driver.

This error requires a new trial.—Reversed and remanded.

All JUSTICES concur.