**STATE of Iowa, Appellee,**

v.

**John William SATERN, Appellant.**

No. 92–1962.

Supreme Court of Iowa.

May 25, 1994.

James L. Kramer and Thomas J. Bice of Johnson, Erb, Gibb, Bice & Carlson, P.C., Fort Dodge, for appellant.

Bonnie J. Campbell, Atty. Gen., Sheryl A. Soich and Charles N. Thoman, Asst. Attys. Gen., and Kurt J. Stoebe, County Atty., for appellee.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

NEUMAN, Justice.

Defendant John Satern and his friend Harold Schnetter spent the evening of December 13, 1991, drinking and cruising the topless bars around Fort Dodge, Iowa. Shortly after 11 p.m., Satern's pickup crossed the centerline of a rural highway, killing the driver of an oncoming car and seriously injuring the driver's wife. By the time police arrived, Schnetter had fled the scene. Satern told police that he had been asleep in the passenger seat, with Schnetter at the wheel, when the accident occurred. Schnetter, apprehended at a nearby farmhouse, claimed Satern had been driving. Subsequent blood alcohol tests on both men yielded results well in excess of legal limits.

Further investigation led police to believe that Satern most likely had been the driver. The State filed a three-count trial information charging him with the crimes of vehicular homicide, injury by vehicle, and operating while intoxicated. See Iowa Code §§ 707.-6A(1), 707.6A(3), and 321J.2(2)(b) (1991). Based on Satern's insistence that he turned the driving over to Schnetter, however, the State sought Satern's conviction on the first two counts either as a principal or as an aider and abettor. Over Satern's objection, the information was amended before trial to charge him with joint criminal conduct in the commission of those offenses.

A jury returned a general verdict finding Satern guilty as charged. His principal contention on appeal is that the court erred by permitting the jury to convict him on a theory of vicarious criminal liability for the unintended death or injury of another. He also alleges error in a number of the court's evidentiary rulings and jury instructions. Finding no error, we affirm.

Further facts will be detailed as they pertain to the issues under review.

I. *Blood Test Evidence.*

Satern first claims the court erred in overruling his objection to the admissibility of blood test results obtained pursuant to Iowa Code section 321J.6. The thrust of Satern's argument is that the officer invoking implied consent acted without firsthand knowledge of grounds to support the request, upon orders from a person outside his chain of command. These procedural flaws, Satern claims, render the blood test results inadmissible. We cannot agree.

The facts reveal that Schnetter, not Satern, was visibly intoxicated and arrested at the scene of the fatal accident. Satern was transported to a hospital for treatment of injuries. Nevertheless Trooper Kyle Kluen-

der, the investigating officer on the scene, had smelled alcohol on Satern's breath. This observation, coupled with the conflicting stories about who was driving, convinced him that Satern should submit to a blood test. Upon returning to the justice center, Kluender shared his observations with the county attorney. While the two of them were conferring, Humboldt police officer Tom Nielsen walked by. The county attorney directed Nielsen to go to the hospital, find Satern, and invoke implied consent to secure a blood sample. Nielsen did so. Satern concedes that he gave the specimen voluntarily.

■■ The question on appeal is whether the facts sketched above so offend the procedure prescribed by section 321J.6 to warrant the test's exclusion from evidence. The statute authorizes a "peace officer" to request the withdrawal and testing of bodily substances when (1) the officer has reasonable grounds to believe the person was operating while intoxicated and (2) the person has been involved in a motor vehicle accident or collision resulting in personal injury or death. Iowa Code § 321J.6(1)(b). The reasonable grounds test is met "when the facts and circumstances known to the officer at the time action was required would have warranted a prudent person's belief that an offense had been committed." *State v. Braun*, 495 N.W.2d 735, 738–39 (Iowa 1993); *State v. Owens*, 418 N.W.2d 340, 342 (Iowa 1988). The knowledge of one police officer, acting in concert with others, is presumed to be shared by all. *Owens*, 418 N.W.2d at 342. Underlying the procedural requirements of section 321J.6 is a threefold purpose: to protect the health of the person being tested, to guarantee accuracy of test results used in judicial proceedings, and to prevent citizens from indiscriminate testing or harassment. *State v. Hopkins*, 465 N.W.2d 894, 896 (Iowa 1991).

■ Although the record plainly reveals that Officer Nielsen had no personal knowledge of Satern's intoxication or involvement in the accident, it is equally plain that Trooper Kluender had the necessary knowledge and imparted it to the county attorney. Moreover Kluender's knowledge was conveyed to the county attorney in—or immediately preceding—Nielsen's presence. The problem is that Nielsen received his direct order from the county attorney, not Trooper Kluender. The county attorney is not a "peace officer" under the statute. *See* Iowa Code § 321J.1(7).

We are convinced that this technical and momentary break in the chain of command should not defeat the rule of shared knowledge articulated in *Owens*. The admissibility of evidence rests in the sound discretion of the trial court. *State v. Zaehringer*, 280 N.W.2d 416, 419–20 (Iowa 1979). There is no dispute that Satern's blood test results were both relevant to this prosecution and reliable. Given the substantial, if not literal, compliance with the statute under this record, the question becomes whether any of the three purposes underlying section 321J.6's procedural technicalities—protection of health, test accuracy, or citizen harassment—were compromised by the court's ruling. *State v. Schlemme*, 301 N.W.2d 721, 723–24 (Iowa 1981). The record before us convinces us they were not. Thus we find no abuse of the trial court's discretion in admitting Satern's blood test results into evidence.

## II. Other Evidentiary Issues.

A. *Hair fragments*. A key issue at trial was the identity of the driver of Satern's truck. Both Satern and Schnetter claimed to have been asleep in the passenger's seat when the collision occurred. Immediately after the accident, strands of Schnetter's hair were found embedded in the center of the shattered truck windshield. A more painstaking search a month later yielded two strands of hair wedged in trim identified as a "contact point" in the upper left-hand corner of the windshield. Laboratory tests could not accurately connect these hairs with either Satern or Schnetter. But their discovery and location—when combined with evidence of the truck's motion on impact and Schnetter's hair in mid-windshield—reinforced the State's argument that Satern was the driver.

By pretrial motion in limine, and again at trial, Satern unsuccessfully objected to the admission of this physical evidence on foundational grounds. He renews that argument on appeal, claiming that because the State

kept the truck in an unsecured location, subject to vandalism, and because the hairs could not be positively identified, the evidence should have been excluded.

■ It is axiomatic that before physical evidence may be admitted at trial, it must be identified as relating to the case. *State v. Hall*, 297 N.W.2d 80, 87 (Iowa 1980), *cert. denied*, 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981). The sufficiency of that identification turns on trial court findings made in the light of "the article's nature, circumstances surrounding its custody and the likelihood of intermeddlers tampering with it." *Id.* The State must show a reasonable probability that tampering, substitution, or alteration of the evidence did not occur. *State v. Gibb*, 303 N.W.2d 673, 681 (Iowa 1981). Once the court rules on the sufficiency of the identification, contrary speculation affects the weight but not the admissibility of the evidence. *State v. Lunsford*, 204 N.W.2d 613, 617 (Iowa 1973).

■ We believe the district court properly identified Satern's evidentiary challenge as a matter of weight, not admissibility. The two strands were identified by lab tests as "Caucasian head hair fragments," thus establishing a threshold link to the vehicle's occupants. Testimony concerning the difficulty with which investigators removed the hairs from the contact point effectively mitigated any legitimate concern that they were somehow "planted" there after the collision. Despite evidence of minor vandalism to other parts of the vehicle, photographic proof countered Satern's suggestion that the car had lost its evidentiary integrity while in storage. Viewing the record as a whole, we believe the court could reasonably find that the fragments were related to the accident, probative on the question for which they were offered, and therefore admissible. No abuse of discretion has been shown.

■ B. *Police Report.* Trooper Randy Steinkamp testified concerning physical evidence collected at the scene. The State carefully steered him away, however, from any opinion concerning who the driver was at the time of the collision. On cross-examination, Satern sought to introduce Steinkamp's initial accident report which opined—without benefit of laboratory results or expert accident reconstruction evidence—that Schnetter, not Satern, had been the driver. The State successfully resisted the proffer of this evidence, convincing the court that the former report went beyond the scope of direct examination, thus rendering it inadmissible as a prior inconsistent statement.

On appeal Satern claims the court's ruling prevented him from introducing crucial evidence casting doubt on the identity of the driver. The assignment is without merit. The district court made it plain that Satern was free to call anyone he wished—including Trooper Steinkamp—to elicit proof that Schnetter, not he, drove the offending vehicle. The court's limitation merely addressed Satern's attempt to impeach the witness on a matter not then in controversy. As such, the report was not admissible as a prior inconsistent statement under Iowa Rule of Evidence 801(d)(1)(A). *State v. Thompson*, 397 N.W.2d 679, 684 (Iowa 1986).

The challenged ruling principally addressed the orderly presentation of evidence. Additionally, however, the court expressed its belief that admission of the prior report could only prejudice Satern. It cautioned that if the impeachment were permitted, the State's subsequent effort to rehabilitate its witness could in fairness extend to the reasons for the trooper's change of mind, including the negative results of Satern's polygraph examination. In sum, the district court's ruling displayed evenhandedness, not abuse of discretion. No ground for reversal appears.

III. *Vicarious Liability.*

■ Because Satern and Schnetter both disclaimed responsibility for the fatal collision, the State proceeded against Satern on alternative theories: as a principal or as an accomplice in joint criminal conduct. The court instructed the jury accordingly. On appeal Satern claims the court erred, as a matter of law, in permitting the jury to premise criminal culpability for vehicular homicide or injury by vehicle on a theory of vicarious liability. The question is one of first impression in Iowa. Because we per-

ceive no meaningful distinction between imposing criminal liability for an unintended death or injury resulting from drunk driving, and imposing criminal consequences for unintended deaths that occur in furtherance of other criminal behavior, we reject Satern's contention and affirm the district court.

Our analysis involves the interplay of statutes bearing on the substantive offenses, and definitions falling under the general heading of "parties to crime" in Iowa Code chapter 703. To sustain a conviction for vehicular homicide, the State must prove the defendant "unintentionally cause[d] the death of another" by "[o]perating a motor vehicle while under the influence of alcohol ... or while having an alcohol concentration ... of .10 or more." Iowa Code § 707.6A(1)(a). Likewise, a person may be convicted of serious injury by vehicle upon proof that the person "unintentionally cause[d] a serious injury" by means of operating a motor vehicle while intoxicated. Iowa Code § 707.6A(3). The statute defining aiding and abetting provides:

> All persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, shall be charged, tried and punished as principals. The guilt of a person who aids and abets the commission of a crime must be determined upon the facts which show the part the person had in it, and does not depend upon the degree of another person's guilt.

Iowa Code § 703.1. A companion provision defining joint criminal conduct states:

> When two or more persons, acting in concert, knowingly participate in a public offense, each is responsible for the acts of the other done in furtherance of the commission of the offense or escape therefrom, and each person's guilt will be the same as that of the person so acting, unless the act was one which the person could not reasonably expect to be done in the furtherance of the commission of the offense.

Iowa Code § 703.2.

The concepts of vicarious liability embraced in these two doctrines are quite distinct. Under section 703.1, the aider and abettor is held liable for the same crime which he or she has knowingly aided the principal in committing, "either by active participation in it or by some manner encouraging it prior to or at the time of its commission." *State v. Lott*, 255 N.W.2d 105, 107 (Iowa 1977). Joint criminal conduct, on the other hand, takes the enterprise a step further. It contemplates *two* acts—the crime the joint actor has knowingly participated in, and a second or resulting crime that is unplanned but could reasonably be expected to occur in furtherance of the first one. *State v. Irvin*, 334 N.W.2d 312, 314–15 (Iowa App. 1983). Depending on the case, it may be appropriate for the court to instruct on both doctrines. *Thompson*, 397 N.W.2d at 685; 4 John J. Yeager & Ronald L. Carlson, *Iowa Practice* § 63 (Supp.1993).

Here the court posed two alternatives for the jury's consideration. Under alternative A, it could find Satern guilty if the State proved Satern (1) operated a motor vehicle while intoxicated and (2) thereby caused the death of the other driver. Under alternative B, the jury was instructed it could find Satern guilty if the State proved (1) Satern knowingly participated with Harold Schnetter in the crime of OWI, (2) while so participating, Schnetter committed the two elements of vehicular homicide described in alternative A, and (3) Schnetter's conduct in causing the other driver's death could reasonably be expected to be done in furtherance of the crime of OWI.

■ Satern mounts several challenges to the application of this statutory scheme and the court's instructions. Preliminarily he attacks the charging instrument itself. As amended, the trial information added the theory of joint criminal conduct but deleted an earlier reference to the theory of aiding and abetting. Because of the deletion, Satern claims surprise and unfairness in the pursuit of this theory at trial. The claim is without merit. In *State v. Black*, 282 N.W.2d 733 (Iowa 1979), we rejected a similar argument, holding that the language of section 703.1 makes it unnecessary—in fact, "surplusage"—to charge a defendant as both principal and an aider and abettor. *Id.* at 735.

Next Satern asserts that, as a fundamental principle, he cannot be found guilty of aiding and abetting an unintended act, that is, the death or serious injury of an accident victim. We believe Satern's argument misperceives both the State's theory of prosecution and the court's instructions. Under the State's theory, upon proof that Satern aided and abetted an intoxicated Schnetter in the operation of Satern's vehicle, Satern would be liable for the foreseeable consequences of that act on a theory of joint criminal conduct. Under the court's instructions, the jury was told to consider proof of aiding and abetting only insofar as the OWI was concerned; it was this crime which Satern allegedly countenanced and knowingly participated in.

Implicitly Satern argues that we should overrule *State v. Storms,* 233 Iowa 655, 657, 10 N.W.2d 53, 54 (1943), and *State v. Myers,* 207 Iowa 555, 556, 223 N.W. 166, 166 (1929), two cases which hold that a defendant may be found guilty, and punished as a principal, for aiding and abetting the crime of drunk driving. We decline the invitation. In both *Storms* and *Myers,* the convictions turned on proof of the aider and abettor's part in the venture, encouraging or initiating the act of driving, and sitting alongside the driver in the passenger's seat. *See Storms,* 233 Iowa at 657, 10 N.W.2d at 54; *Myers,* 207 Iowa at 556, 223 N.W. at 166. Satern urges us to follow two more recent cases in which other courts have rejected aiding and abetting as a means of holding a nondriver accountable for the consequences of a companion's drunk driving. *See State v. Etzweiler,* 125 N.H. 57, 65, 480 A.2d 870, 875 (1984), and *People v. Marshall,* 362 Mich. 170, 173, 106 N.W.2d 842, 844 (1961). We note, however, that the defendant vehicle owners in those cases merely turned over the keys to the drunk driver; they did not further participate as accomplices in the enterprise. Had the owner accompanied the driver, each court observed, their holdings might have been different. *Etzweiler,* 125 N.H. at 62, 480 A.2d at 873; *Marshall,* 362 Mich. at 172, 106 N.W.2d at 843. Thus we are not persuaded by these cases to depart from this court's holdings in *Myers* and *Storms* which, we believe, correctly applied the aiding and abetting statute under circumstances nearly identical to those before us.

■ Given this authority to proceed against Satern on the underlying crime (OWI) as an aider and abettor, the question remains whether joint criminal conduct is the proper vehicle for holding Satern criminally accountable for Schnetter's subsequent unintended act. Satern argues strenuously that it is not, insisting that an unintended and fatal collision "stops" rather than "furthers" the crime of OWI. Taken out of context, it is arguable that use of the phrase "in furtherance of" in section 703.2 could be narrowly interpreted this way. Such an interpretation, however, would defeat the long-standing rationale underlying the punishment of joint criminal actors:

> Where two or more persons combine to accomplish an unlawful purpose, each is responsible for the act of another which is a probable consequence of carrying out the unlawful design even though the particular crime committed was not a part of that design.

*State v. Kneedy,* 232 Iowa 21, 30, 3 N.W.2d 611, 616 (1942); *see also State v. Pasnau,* 118 Iowa 501, 504, 92 N.W. 682, 683 (1902). Put in the proper perspective, the sum total of Schnetter's actions, from the time Satern put him behind the wheel of his truck to the point where he recklessly crossed the highway and collided with an oncoming car, furthered the crime of OWI. The subsequent crime was incidental to carrying out the illegal act. *Conner v. State,* 362 N.W.2d 449, 456 (Iowa 1985).

The escape clause for persons in Satern's position is the required element of foreseeability of the subsequent act. *See* Iowa Code § 703.2; John J. Yeager, *Ten Years With the Iowa Criminal Code,* 38 Drake L.Rev. 831, 849 (1988–89). This statutory notion of foreseeable consequences, combined with the common-law meaning of joint criminal conduct, suggests that "in furtherance of" is not limited to acts done to promote or advance the underlying crime, but includes acts done "while furthering" that offense. This is the concept embodied in the uniform jury instruction on joint criminal conduct given in this case:

When two or more persons act together and knowingly commit or participate in a crime, each is responsible for the other's acts *during the commission of the crime.* The defendant's guilt is the same as the other person's unless the act could not reasonably be expected to be done in aiding the commission of the crime.

Iowa Crim.Jury Instruction 200.7 (emphasis added). We find no error in the application of this principle where death or serious injury occurs during the course of operating a vehicle while intoxicated. Nor do we believe the court erred in so instructing the jury in this case.

Finally we address Satern's contention that application of the aiding and abetting and joint criminal conduct doctrines to this case exceed common expectations of vicarious liability for drunk driving, catching defendants by surprise and thereby offending constitutional notice requirements. The argument is without merit. All persons are presumed to know the law. Iowa Code § 701.6. Iowa Code sections 703.1 and 703.2 articulate the particulars of accomplice liability for the commission of a public offense. "Public offense"—an act prohibited by statute and punishable by fine or imprisonment—would commonly be understood to include drunk driving and vehicular homicide. *See* Iowa Code § 701.2. We see no reason to carve out of the law of accomplice liability— applicable to all other crimes—an exception for those who actively encourage others to drink and drive. Those who abet such criminal activity should, in fairness, be held no less accountable for the unintended, yet foreseeable, consequences of their reckless and criminal acts. *See Conner,* 362 N.W.2d at 456 (rejecting due process challenge to accomplice liability for unintended acts).

The judgment and sentence of the district court, convicting John Satern of vehicular homicide and serious injury by vehicle, is hereby affirmed.

**AFFIRMED.**