# IN THE COURT OF APPEALS OF IOWA

No. 13-1647
Filed December 10, 2014

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**JACOLBY PENDLETON,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Margaret L. Lingreen, Judge.

A defendant challenges his conviction for robbery in the second degree. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kyle Hanson, Assistant Attorney General, Ralph Potter, County Attorney, and Christine Corken, Assistant County Attorney, for appellee.

Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**TABOR, J.**

Timothy Waddell was "jumped" from behind by two men as he walked home from the public library in downtown Dubuque. A jury convicted Jacolby Pendleton of robbery in the second degree for his role in the attack on Waddell. On appeal, Pendleton raises two claims of ineffective assistance of counsel. First, Pendleton argues his attorney should have been more specific in moving for judgment of acquittal. Second, Pendleton contends his attorney should have objected to the instructions as failing to inform the jury that the assault element of robbery required proof of specific intent. Because Pendleton cannot show either of these alleged omissions by his attorney resulted in prejudice, we affirm.

## I.      Background Facts and Proceedings

In reaching its guilty verdict, the jury had access to the following evidence.

Waddell left the library a few minutes before its 9 p.m. closing time on February 28, 2013. Not having a car, Waddell started walking alone toward his home. About three blocks from his destination, near the intersection of Locust and Fourteenth Street, Waddell sensed he was being followed. He then felt a sharp blow to the back of his head. Waddell recalled being "dazed" by the initial blow. As he turned around to see what hit him, he was thrown to the ground, where he was "pummeled a little bit." A voice told him to "give up" his money and he felt a hand reaching into the pockets of his yellow winter coat. When Waddell told his attackers he had no money with him, "they scattered."

Waddell believed he was assaulted by two men, but could not provide "a good description" of them "as quick as it happened." He recalled one of the men

standing over him wearing a parka, and described that suspect as African American, "about 5-11 maybe, a skinny person."

After his two assailants ran off, Waddell walked home to assess his injuries. He had a "goose egg" on the back of his head, a sore jaw, and cuts on his face. Waddell then walked to the police station, where he reported the incident to Officer Neil Dolphin.

Two days later, on March 2, Dubuque police officer Clark Egdorf was on patrol at 3:30 in the morning when he saw a tan-colored 2004 Toyota Highlander SUV parked alongside the road with its lights off and two people inside. The officer spoke to the occupants, Jacolby Pendleton and Shelby Eisbach, both nineteen years old. The SUV was registered to Eisbach's parents. Officer Egdorf did not take any action, but documented the encounter in the shift report so other officers could review the information later if needed.

On March 5, 2013, Officer Kurt Rosenthal reviewed the shift reports, noting the unsolved robbery, as well as the early morning encounter with Pendleton and Eisbach. Rosenthal went to the city engineer's office to obtain the traffic camera footage for the vicinity of the robbery on the evening of February 28. He also retrieved surveillance footage from security cameras used by a funeral home in downtown Dubuque. When the officer reviewed the footage he saw a Toyota Highlander pull into an alley near the time and location of the robbery. He also saw two African American men emerge from the alley and follow a man wearing a yellow coat, who appeared to be Waddell. The footage did not show the robbery itself. But Officer Rosenthal did see an individual he

believed to be Pendleton walk into the alley by himself and then sprint back to the SUV with the other suspect.

Officer Rosenthal also interviewed Eisbach, who acknowledged driving around downtown Dubuque on February 28 with Pendleton, who was her boyfriend, and his friend, Robert Snead—at one point dropping the two men off in an alley and later picking them back up. Pendleton's sister was also in the SUV.

When interviewed by Officer Rosenthal, Pendleton admitted he and Snead were the men captured on the footage sprinting down the alley. Pendleton told the officer they parked in the alley because the two men stopped by the residence of Snead's aunt and did not want Eisbach to know where Snead's aunt lived. Pendleton testified at trial they went to the aunt's house to get marijuana. When the officer asked Pendleton if he had assaulted anyone, he responded "[N]one of the victims would be able to identify him."

Eisbach testified that when they were driving around in her parents' SUV on February 28, Pendleton and Snead joked about "catching people's wallets" and "hitting a lick"—both phrases she understood to mean committing robberies. She recalled Pendleton and Snead pointing out people on the street they saw as "therms"—a term for weak people who would be easy to bully. When they spotted an older man, they called him "an easy stang"—meaning a person from whom they could easily steal.[1]

According to Eisbach, after the SUV stopped in the alley, Pendleton and Snead "got out and started running toward the street that the man was walking

---

[1] The trial record showed Waddell was in his mid-forties and received disability benefits.

on." The young women then drove around looking for them. They eventually rendezvoused by the funeral home. When they jumped back into the SUV, Eisbach remembered Pendleton and Snead saying "the man ran off and that one of them punched him in the head but he ran off too fast and so they came back to the car." Eisbach thought Pendleton looked disheveled when he returned to the SUV, like he had been in a struggle.

On March 26, 2013, the State charged Pendleton with second-degree robbery, in violation of Iowa Code sections 711.1(1) and 711.3 (2013). The jury trial started on June 24 and concluded with a guilty verdict on June 26, 2013. The court sentenced Pendleton to an indeterminate ten-year prison term with a mandatory minimum of seven years. Pendleton appeals his conviction.

## II. Analysis of counsel's performance

We review Pendleton's claims of ineffective assistance of counsel de novo because they are grounded in the Sixth Amendment. *See State v. Gines*, 844 N.W.2d 437, 440 (Iowa 2014). The burden rests with Pendleton to show his attorney performed below par and that subpar performance resulted in prejudice to his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (establishing familiar two-part test). Pendleton must show it was reasonably probable the result of the prosecution would have differed but for counsel's errors. *See id.* at 694. A claim of ineffective assistance alleging the failure of counsel to raise a claim of insufficient evidence to support a conviction normally can be decided on direct appeal. *State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004).

Pendleton alleges his attorney committed two errors: failure to challenge the State's evidence he was the principal in the robbery and failure to request a jury instruction specifying the assault element of robbery required proof of his specific intent. We will address each allegation in turn.

### A. Motion for Judgment of Acquittal

After the State's case-in-chief, defense counsel moved for judgment of acquittal, generally asserting the State did not prove Pendleton's guilt beyond a reasonable doubt. Counsel mentioned the "videos put into evidence by the State" and argued they could not lead a reasonable juror to conclude his client was one of "the actual subjects" who committed the robbery.

On appeal, Pendleton alleges counsel breached an essential duty by not targeting the prosecutor's proof he was the principal in the robbery, "the only theory of prosecution pursued by the State." Pendleton claims the evidence was insufficient to prove his liability as the principal because he "was never singled out as the one who actually threw the punches." Pendleton contends that had his attorney challenged the proof he was the robbery participant who assaulted Waddell to carry out the intent to commit a theft or to assist in escaping from the scene, the district court would have granted the motion for judgment of acquittal.

It is true neither the trial information nor the jury instructions incorporated a theory of aiding and abetting. On appeal, the State refers to the absence of the aiding-and-abetting alternative as a "fixable oversight." The State argues if defense counsel had based the motion for judgment of acquittal on alleged insufficient evidence to show Pendleton was the principal, the prosecutor would

have addressed aiding and abetting in resisting the motion for judgment of acquittal and would have sought a jury instruction on that alternative theory of criminal liability. The State emphasizes it is unnecessary—in fact surplusage—to charge a defendant as both a principal and as an aider and abettor. *See State v. Satern*, 516 N.W.2d 839, 843 (Iowa 1994); *State v. Black*, 282 N.W.2d 733, 734 (Iowa 1979) (interpreting Iowa Code section 703.1[2]). In the alternative, the State argues sufficient evidence supported the jury's verdict finding Pendleton guilty as the principal. We accept the State's alternative argument.

The State proceeded on the theory that Pendleton intended to commit a theft and, in carrying out that intention, Pendleton assaulted Waddell. Viewing the evidence in the light most favorable to the State, a reasonable jury could have found substantial evidence to support that theory. Eisbach recalled Pendleton and his friend expressing their intent to commit a robbery—speaking in slang terms. They picked out their target and left the SUV. Cameras captured Pendleton and his friend pursuing the victim. Waddell said he was struck from behind, pummeled while on the ground, and the assailants rifled through his pockets. Waddell saw two men flee the scene and cameras captured them sprinting back to the SUV. Where the evidence reveals multiple participants in a robbery are acting in concert, our case law has held "the conduct of one

---

[2] Section 703.1 provides:
> All persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, shall be charged, tried and punished as principals. The guilt of a person who aids and abets the commission of a crime must be determined upon the facts which show the part the person had in it, and does not depend upon the degree of another person's guilt.

accomplice is attributable to all." *State v. Johnson*, 162 N.W.2d 453, 455 (Iowa 1968).

When asked during the trial if Pendleton looked disheveled when he got back into the SUV, Eisbach replied: "Yeah. They looked like they struggled a little bit." The jury could infer from that response that Pendleton, acting as the principal, struggled with Waddell during the robbery. In addition, Pendleton initially lied to Officer Rosenthal about his whereabouts that night, but acknowledged being in the vicinity of the robbery when confronted with the video evidence. *See State v. Odem*, 322 N.W.2d 43, 47 (Iowa 1982) (explaining false story may be indication of guilt). Pendleton also tellingly said "none of the victims would be able to identify him"—betraying the fact he was aware the victim was struck from behind.

On this record, Pendleton cannot show a more specific motion for judgment of acquittal, challenging the State's theory that he acted as the principal in the robbery, would have made a difference in the outcome of the trial. Accordingly, he fails to satisfy the prejudice prong of his ineffective-assistance claim. *See State v. Scalise*, 660 N.W.2d 58, 62 (Iowa 2003) (concluding even if trial counsel could have made a more specific motion for judgment of acquittal, a claim of ineffective assistance of counsel cannot be established if the State's evidence was sufficient to generate a jury question on defendant's guilt).

## B. Specific Intent Instruction

We next consider Pendleton's claim that counsel was ineffective for not challenging the jury instructions. Pendleton argues he was prejudiced by

counsel's omission because "the jurors were never instructed that assault was a specific intent crime."

The marshalling instruction for robbery used in this case required the State to prove the following elements: (1) Pendleton "had the specific intent to commit a theft," and (2) in carrying out his intention or to assist him in escaping from the scene, with or without stolen property, he committed an assault on Timothy Waddell. *See* Iowa Code § 711.1. Concerning element number two, the court instructed the jury: "[A]n Assault is committed when a person does an act which is meant to cause pain or injury to another person, when coupled with the apparent ability to do the act."

The court also provided the jury with an instruction defining specific intent:

> "Specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind.
> Because determining the Defendant's specific intent requires you to decide what he was thinking when an act was done, it is seldom capable of direct proof. Therefore, you should consider the facts and circumstances surrounding the act to determine the Defendant's specific intent. You may, but are not required to, conclude a person intends the natural results of his acts.

The court did not provide the jury with an instruction defining general intent.

Pendleton points out that proof of specific intent is required for both elements of robbery, yet the specific intent instruction was not "linked in any way" to the assault definition. He claims counsel was ineffective in not requesting such a link.

The State offers a two-fold response. First, the State contends counsel had no duty to object to the instructions given because they adequately

conveyed to the jury the proof of intent required for the assault element of robbery. Second, the State argues Pendleton's strategy did not depend on a more precise specific intent instruction.

Our supreme court has decided assault is a specific intent crime. *See State v. Fountain*, 786 N.W.2d 260, 265 (Iowa 2010) (explaining its conclusion that assault includes an element of specific intent is not inconsistent with the legislature's action in amending Iowa Code section 708.1 to define assault as a general intent crime because the legislature did not change the elements of assault). In *Fountain*, a domestic abuse assault prosecution, the district court provided only a general intent instruction. *Id.* at 262. On appeal, the supreme court decided the district court was required to instruct the jury on specific intent, but preserved the question whether trial strategy could explain counsel's failure to ask for a specific intent instruction. *Id.* at 267.

In Pendleton's case, the district court did instruct the jurors on specific intent, and only on specific intent. The absence of a general intent instruction removed the possibility of jury confusion. The court also used plain language to explain the intent required for assault: "[A] person does an act which is meant to cause pain or injury to another person." Because the jury was accurately informed of the mens rea element of assault, the lack of a cross reference to the specific intent instruction was of little consequence. *See State v. Keeton*, 710 N.W.2d 531, 534 (Iowa 2006) (opining regardless of the specific label attached— specific intent or general intent—the State must prove the elements of the crime and their accompanying mens rea beyond a reasonable doubt). The jury

understood the State was required to prove Pendleton's act was meant to cause Waddell pain or injury, which is consistent with doing that act with a specific purpose in mind. Counsel did not breach an essential duty by not objecting to the instructions as given.

Even if counsel should have requested a cross reference between the assault element and the specific intent definition, Pendleton cannot show his case would have come out differently as a result. The defense did not dispute the occurrence of an assault; in closing argument, counsel said: "We know Mr. Waddell got assaulted. We know that." The fighting issues were who assaulted Waddell and was he actually robbed. Neither of those questions hinged on the intent element of assault. Clearer instructions on assault as a specific intent crime would not have aided Pendleton's defense. *See Fountain*, 786 N.W.2d at 267 (contemplating defense strategy where individual elements of assault become important).

Because Pendleton is unable to establish his defense was prejudiced by counsel's performance, we decline to grant a new trial.

**AFFIRMED.**