# IN THE COURT OF APPEALS OF IOWA

No. 16-2022
Filed October 25, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ALEJANDRO ANDRES LIRA,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Clinton County, Henry Latham II, Judge.

        Defendant appeals his convictions for robbery in the first degree and attempted murder. **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.

        Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**BOWER, Judge.**

Alejandro Lira appeals his convictions for robbery in the first degree and attempted murder. We find Lira's convictions are supported by substantial evidence. We affirm his convictions.

### I.  Background Facts & Proceedings

Lira and Michael Dewispelaere were associated drug dealers in the Quad Cities area. Dewispelaere would sell drugs to Lira, and Lira would repay him with cash or different drugs. Late in July 2015, Dewispelaere gave Lira two pounds of marijuana. Lira did not pay the full purchase price at the time of the exchange and was expected to pay about $5000 to Dewispelaere when Lira sold the marijuana. After about a week, Lira informed Dewispelaere he had been robbed and was unable to pay.

At the beginning of August, Lira wanted to buy five pounds of marijuana from Dewispelaere. Lira hoped to make enough reselling it he would be able to repay Dewispelaere for the earlier sale. The parties met twice, but the sale never occurred due to mistrust on both sides. After the sale fell through, Lira texted Dewispelaere stating, "You made me look like a straight jerk, bro," and "I'm not even going to fake the funk with you, bro. I feel so disrespected by the way you did that."

On August 11, 2015, Lira texted Dewispelaere stating, "I got that bread for you now," which Dewispelaere believed meant Lira was ready to pay him for the earlier sale. Lira asked Dewispelaere to pick him up, which Dewispelaere did at about 10:00 p.m. Lira made some calls on his cell phone as they were traveling.

He stated he needed to pick up some cocaine, which Dewispelaere believed Lira intended to give him in partial payment of his debt. Lira told Dewispelaere to stop at an apartment complex in West Davenport. Dewispelaere testified, when he stopped a man jumped into the backseat of his vehicle and pointed a gun at his head, saying he was going to kill Dewispelaere. Dewispelaere stated Lira told him they intended to rob him and also stated, "This is what happens when you disrespect me." Dewispelaere was told to drive to his home, where the robbers believed he had drugs and cash. Another vehicle followed Dewispelaere's vehicle.

Rather than drive to his home, Dewispelaere drove to the police station in DeWitt. He was familiar with its location as he had opened an account at a bank across the street a week earlier. Dewispelaere purposely drove his vehicle into the rear end of a squad car parked in front of the station. Dewispelaere testified Lira said, "Do it," and the third man fired four shots. All three men got out of the vehicle. The shooter got into the vehicle that had been following them and left the area. Dewispelaere stated he saw Lira running away so he tackled him. After hitting Lira a few times, Dewispelaere realized he had been shot. Lira was able to get up and run away. Officer Jeff Williams came out of the police station and found Dewispelaere bleeding profusely. Dewispelaere was taken to the hospital, where doctors found a bullet had traveled through his shoulder and was lodged in his jaw.

Lira called his girlfriend, Haley Sacakli, and asked her to pick him up in DeWitt. He stated he was unfamiliar with DeWitt and needed Sacakli to

download an app so she could find him through his cell phone. His clothes were covered in blood when he got in Sacakli's vehicle. Lira went to his parents' house, where he burned his clothes. Lira's eyeglasses were found in a storm sewer near where Dewispelaere had tackled him near the DeWitt police station.

Lira was charged with robbery in the first degree, in violation of Iowa Code section 711.2 (2015), and attempt to commit murder, in violation of section 707.11, both class "B" felonies.[1] During the criminal trial, Lira testified, when the third man got into the car he put a gun to Lira's head. He stated Dewispelaere and this third person wanted to rob him. He stated he told them he had money at home, used his cell phone to find a nearby police station, and directed Dewispelaere to the DeWitt police station, rather than to his home. Lira stated he jerked the wheel and elbowed Dewispelaere as they drove by the police station. Lira testified Dewispelaere told the third person to shoot Lira, and as soon as Lira heard a gunshot the vehicle crashed into the squad car. Lira testified he ran away, rather than seek assistance from the police, because he was carrying $8000 obtained from selling drugs. He stated he burned his clothes because they were covered in blood and he did not think he could wear them again.

A jury found Lira guilty of first-degree robbery and attempted murder. Lira was sentenced to a term of imprisonment not to exceed twenty-five years on each charge, to be served consecutively. Lira appeals his convictions, claiming they are not supported by substantial evidence in the record.

---

[1] The State also charged Lira with second-degree kidnapping but later dismissed this charge.

## II. Standard of Review

On claims concerning the sufficiency of the evidence, the Iowa Supreme Court has stated:

> Sufficiency of evidence claims are reviewed for a correction of errors at law. In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed "in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." "[W]e will uphold a verdict if substantial record evidence supports it." We will consider all the evidence presented, not just the inculpatory evidence. Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt. "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence."

*State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (citations omitted).

## III. Sufficiency of the Evidence

**A.** Lira first claims Dewispelaere was not a credible witnesses and points to discrepancies in his testimony: (1) Dewispelaere stated he had no contact with Lira during his work hours on August 11, but had exchanged text messages with Lira; (2) Dewispelaere stated his Samsung cell phone slipped between the driver's seat and the center console, but it was found in a bag in the backseat; and (3) Dewispelaere testified he hit the squad car then the third man fired four shots, while Officer Williams stated he heard four shots then heard the car crash. Lira additionally states it was unlikely Dewispelaere would permit an unknown person to get into his vehicle while they were engaged in a drug deal.

Dewispelaere testified he did not remember the text message from Lira while he was working but agreed during cross-examination it had occurred. As

part of his drug-dealing business, Dewispelaere had three cell phones. Two of the cell phones were in the front console, while the third was in a bag in the backseat, and he may not have remembered the location of each cell phone. Officer Williams testified the gunshots and car crash happened within seconds. Also, Lira testified, "as soon as we hear a gunshot, we crash into the car that was directly in front of us, which ended up being a police car." Furthermore, Lira told Dewispelaere he needed to meet someone to pick up cocaine, so Dewispelaere would not have been surprised when a person got into the car.

While there were some discrepancies in Dewispelaere's testimony, there were also several discrepancies in Lira's testimony. Lira testified he was in the front passenger seat while Dewispelaere was driving and the third person was in the backseat holding a gun to his head but claimed neither Dewispelaere nor the third person noticed Lira was using the GPS on his cell phone to find a police station. He stated he just happened to pick the police station in DeWitt, a town he did not know at all, and was able to direct Dewispelaere to drive there, despite the fact Dewispelaere testified he knew the location of the police station from previous trips to DeWitt and would have known to avoid the police station if he had been the person committing robbery. Also, Lira was unable to explain why a vehicle had followed Dewispelaere's vehicle. As the prosecutor pointed out, Dewispelaere was in his vehicle and did not need an escape vehicle, so having a vehicle follow him was not helpful, while Lira and the third person did need an escape vehicle, and in fact, the third person got into the vehicle and left the

scene. Furthermore, although Lira stated he directed Dewispelaere to the police station, he ran away rather than get assistance from officers.

As noted above, the jury was free to credit certain evidence and to reject other evidence. *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006). The jury could find Dewispelaere's testimony was more credible than Lira's testimony. *See State v. Blair*, 347 N.W.2d 416, 420 (Iowa 1984) ("The very function of the jury is to sort out the evidence presented and place credibility where it belongs.").

**B.** Lira claims there is not sufficient evidence in the record to support his conviction for first-degree robbery. The jury was instructed:

> Under Count 1, the State must prove all of the following elements of Robbery in the First Degree:
> 1. On or about the 11th day of August, 2015, the defendant or someone he aided and abetted had the specific intent to commit a theft.
> 2. To carry out his intention or to assist him in escaping from the scene, with or without the stolen property, the defendant or someone he aided and abetted:
> (a) Committed an assault on Michael Dewispelaere; or
> (b) Threatened Michael Dewispelaere with, or purposely put Michael Dewispelaere in fear of immediate serious injury.
> 3. The defendant or someone he aided and abetted was armed with a dangerous weapon.

Under the instructions, the jury could find Lira was the principal or he was someone who aided and abetted in the offense. A person engages in knowing aiding and abetting by either active participation in a crime or by encouraging the crime prior to or at the time of its commission. *State v. Satern*, 516 N.W.2d 839, 843 (Iowa 1994). A defendant's mere presence during an offense is not enough, but the defendant's "participation can be inferred 'from circumstantial evidence

including presence, companionship and conduct before and after the offense is committed.'" *State v. Miles*, 346 N.W.2d 517, 520 (Iowa 1984) (citation omitted).

The jury could find Lira asked Dewispelaere to pick him up and directed him to the location where the third person jumped into the vehicle and put a gun to Dewispelaere's head. Dewispelaere testified Lira told him he intended to commit a theft. There was substantial evidence to show Lira and the third man acted in concert with the intent to rob Dewispelaere. Also, an assault was committed on Dewispelaere, as he was shot by the third person, which assisted Lira and the third man in escaping from the scene. Dewispelaere's efforts to detain Lira were hampered because Dewispelaere had been shot. The third person was armed with a dangerous weapon, a gun. We conclude there is sufficient evidence in the record to show Lira committed first-degree robbery, either as a principal or as someone aiding and abetting in the crime. *See* Iowa Code § 711.2.

**C.** Lira claims there is not sufficient evidence to show he attempted to commit murder. The jury instruction for this offense stated:

> Under Count 2, the State must prove both of the following elements of Attempt to Commit Murder:
> 1. On or about the 11th day of August, 2015, the defendant or someone he aided and abetted shot Michael Dewispelaere.
> 2. By his or someone he aided and abetted acts, the defendant or someone he aided and abetted expected to set in motion a force or chain of events which would cause or result in the death of Michael Dewispelaere.
> 3. When the defendant or someone he aided and abetted acted, the defendant or someone he aided and abetted specifically intended to cause the death of Michael Dewispelaere.

Lira's text messages show he was upset with Dewispelaere and felt Dewispelaere had "disrespected" him by not following through with the proposed sale of five pounds of marijuana. As noted above, on August 11, 2015, Lira directed Dewispelaere to drive to a specific location, where a third man got into Dewispelaere's vehicle. According to Dewispelaere, the third man immediately put a gun to Dewispelaere's head. The third man told Dewispelaere several times he was going to kill him. Lira stated, "the guy's serious." From this evidence, the jury could conclude Lira and the third man intended to kill Dewispelaere. Dewispelaere testified, "Once I hit the squad car, that's when Lira said, 'Do it' and I heard four gunshots." Dewispelaere was struck by a bullet, which went through his shoulder and lodged in his jaw. The evidence shows Dewispelaere was shot at the direction of Lira. We find there is sufficient evidence in the record to support the jury's verdict finding Lira was guilty of the offense of attempt to commit murder, under theories he was the principal or he aided and abetted in the offense. *See id.* § 707.11.

We affirm Lira's convictions for first-degree robbery and attempted murder.

**AFFIRMED.**