**IN THE COURT OF APPEALS OF IOWA**

No. 17-1056
Filed March 21, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DANIEL JOSEPH BUENNEKE,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.

        Daniel Buenneke appeals following his guilty plea from convictions for second-degree robbery and first-degree theft.  **REVERSED AND REMANDED.**

        Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney General, for appellee.

        Considered by Danilson, C.J., and Vaitheswaran and Bower, JJ.

**VAITHESWARAN, Judge.**

Daniel Buenneke entered an *Alford* plea[1] to second-degree robbery and first-degree theft in connection with an incident at a Waterloo liquor store.[2] The district court imposed sentence, including "[a] mandatory minimum sentence of incarceration . . . for a term of 70% on" the robbery count. On appeal, Buenneke contends his plea lacked a factual basis and his attorney was ineffective in failing to challenge it. He also contends the district court abused its discretion in imposing the mandatory minimum sentence of seventy percent. The first issue is dispositive.

Ineffective assistance claims have two components: (1) breach of an essential duty and (2) prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). "If trial counsel permits a defendant to plead guilty and waives the defendant's right to file a motion in arrest of judgment when there is no factual basis to support the defendant's guilty plea, trial counsel breaches an essential duty," and "we presume prejudice." *Rhoades v. State*, 848 N.W.2d 22, 29 (Iowa 2014). While ineffective assistance claims are generally preserved for postconviction relief, we find the record adequate to address the issue. *See State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999).

Robbery is defined as follows:

> 1. A person commits a robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stolen property:
> a. Commits an assault upon another.

---

[1] An *Alford* plea is a variation of a guilty plea where the defendant does not admit participation in the acts constituting the crime but consents to the imposition of a sentence. *North Carolina v. Alford*, 400 U.S. 25, 37 (1970).
[2] Buenneke also entered *Alford* pleas to two other crimes. They are not at issue on appeal.

    b. Threatens another with or purposely puts another in fear of immediate serious injury.
    c. Threatens to commit immediately any forcible felony.
   2. It is immaterial to the question of guilt or innocence of robbery that property was or was not actually stolen.

Iowa Code § 711.1 (2015).  First-degree robbery occurs "when, while perpetrating a robbery, the person purposely inflicts or attempts to inflict serious injury, or is armed with a dangerous weapon."  *Id.* § 711.2.  "All robbery which is not robbery in the first degree is robbery in the second degree."  *Id.* § 711.3.

"A person commits theft when the person . . . [t]akes possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof."  *Id.* § 714.1(1).  "The theft of property exceeding ten thousand dollars in value, or the theft of property from the person of another . . . is theft in the first degree."  *Id.* § 714.2(1).

The State asserts Buenneke aided and abetted another man in the commission of second-degree robbery and first-degree theft.  "According to the aiding and abetting theory: 'All persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, shall be charged, tried and punished as principals.'"  *State v. Rodriguez*, 804 N.W.2d 844, 852 (Iowa 2011) (quoting Iowa Code § 703.1).  "Under section 703.1, the aider and abettor is held liable for the same crime which he or she has knowingly aided the principal in committing, 'either by active participation in it or by some manner encouraging it prior to or at the time of its commission.'"  *Id.* (quoting *State v. Satern*, 516 N.W.2d 839, 843 (Iowa 1994)).

In the State's view, Buenneke's "actions before and after the crime, including his presence, companionship, and conduct" permit an inference he

participated in the crimes at the liquor store. *See State v. Miles*, 346 N.W.2d 517, 520 (Iowa 1984) (citing *Fryer v. State*, 325 N.W.2d 400, 406 (Iowa 1982)). We are not persuaded.

We begin with the plea to second-degree robbery. The minutes of testimony disclose that Buenneke entered the liquor store with a man later identified as Marlon Harris, Jr. Harris demanded money from one clerk and cigarettes from another. He "displayed a gun in his waistband." The clerks believed he would use it "if they did not do what he said." Harris also shoved one of the clerks and grabbed a bottle of liquor and approximately four packs of cigarettes hanging above the counter.

Buenneke "was located a short distance away from the crime scene." He approached one of the store employees and asked "if she would buy him a shot." She said "No, you already have an open bottle in your hand." She told police Buenneke was "just standing around and was telling Harris 'stop, we are not on this tonight.'" Buenneke left the store with Harris and, as he did so, "took four bags of chips for a total value of two dollars." On leaving, Buenneke committed other crimes with Harris.

There is scant if any indication Buenneke countenanced Harris' threatening displays of a gun or his decision to shove one of the clerks. To the contrary, Buenneke encouraged Harris to back off. The only suggestion of threatening behavior by Buenneke came from a customer, who told police Buenneke stepped between the counter and the customer and ignored the customer's demand to "back the hell up." Neither the customer nor police tied this action to Harris' assaultive behaviors, an intended theft, or an effort to escape. On our de novo

review of the record, we conclude there was no factual basis for second-degree robbery.

We turn to the theft count. The State notes Buenneke, acting as a principal rather than an aider and abettor, stole four chip bags from the store. But the value of the bags was a tiny fraction of the $10,000 threshold for first-degree theft.

There is also no indication Buenneke took the chips "from the person of another" as set forth in section 714.2(1). *See State v. Washington*, 308 N.W.2d 422, 423 (Iowa 1981) ("[T]heft from the victim's area of control, because of its potential for physical confrontation with the thief, could logically be seen as justifying an enhanced penalty."); *State v. Patrick*, No. 02-0955, 2003 WL 558507, at *2 (Iowa Ct. App. Feb. 28, 2003) ("[T]he policy considerations sustaining the prosecution of theft from the person as first-degree theft support a narrow interpretation of 'from the person' requiring the victim and the property to be in close proximity."); *cf. State v. Parker*, 342 N.W.2d 459, 463 (Iowa 1983) (noting prior to 1983, certain items such as "thefts of property from the person of another" were "singled out for separate treatment").

As for Harris' theft and the State's assertion Buenneke aided and abetted in his theft, the State made no record of the value of the liquor bottle and cigarette packs Harris took, but we may easily infer these items did not meet the $10,000 threshold for first-degree theft. There also is no indication Buenneke participated in or encouraged the taking of the liquor bottle near one of the clerks so as to satisfy the taking "from the person of another" portion of section 714.2(1). We conclude there was no factual basis for first-degree theft

We recognize Buenneke entered and exited the store with Harris. *See State v. Jefferson*, 574 N.W.2d 268, 277 (Iowa 1997) (finding sufficient evidence of aiding and abetting a robbery based in part on the fact that codefendants "left the scene together"). But "[m]ere nearness to, or presence at, the scene of the crime, without more evidence, is not 'aiding and abetting.'" *State v. Allen*, 633 N.W.2d 752, 754 (Iowa 2001) (quoting Iowa Crim. Jury Instructions 200.8 (1988)); *see also State v. Henderson*, ___ N.W.2d ___, ___, 2018 WL 1224523, at *6-7 (Iowa 2018).

We also recognize Buenneke was aware of the crimes Harris was committing. But "mere knowledge of the crime is not enough to prove 'aiding and abetting.'" *Allen*, 633 N.W.2d at 754. Unlike *Jefferson*, 574 N.W.2d at 277, where the aider and abettor accompanied his codefendant into a hallway, watched as the codefendant fired a gun at the store clerk, and appeared to have owned or furnished the gun, Buenneke was a short distance away from Harris and encouraged Harris not to commit the crimes. *See State v. Rush-Brantley*, No. 12-1915, 2015 WL 161791, at *6 (Iowa Ct. App. Jan. 14, 2015) (finding insufficient evidence of intent and knowledge to support finding of guilt as aider and abettor).

Nor are we persuaded Buenneke's commission of crimes with Harris after the fact generated a factual basis for the crimes at the liquor store. *See State v. Hearn*, 797 N.W.2d 577, 581 (Iowa 2011) (noting the aider and abettor swerved toward an officer following a carjacking, suggesting he "was involved in the carjacking because he was trying to help the principal carjackers escape the scene of the crime"). Harris was identified as the driver of the vehicle. The crimes were close in time to the crimes at the liquor store but were otherwise unrelated. With

respect to the first—operating a motor vehicle without the owner's consent—Harris was identified as the driver of the vehicle. The crime arose "[s]uddenly" when Harris saw a customer's running vehicle in the parking lot of the liquor store and decided to jump in and take off in that vehicle rather than the one he came in. The remaining crime of theft arose from their decision to take items from the customer's vehicle. As noted, Buennecke does not challenge his convictions for those crimes.

In sum, the record establishes Buennke's presence at the scene of the crimes and his knowledge of the crimes. The record does not establish Buenneke's active participation in or encouragement of the crimes. Because the record lacked a factual basis for second-degree robbery and first-degree theft arising from the liquor store events, Buenneke's attorney breached an essential duty in failing to challenge the plea via a motion in arrest of judgment. Prejudice is presumed.

We are left with the remedy. *See State v. Royer*, 632 N.W.2d 905, 910 (Iowa 2001). Buenneke asserts he was charged with the wrong crimes and we should dismiss the charges. *See id.* The State counters it is possible to "provide additional testimony" to establish a factual basis. *See id.* We agree with the State's proposed remedy. We vacate Buenneke's sentence and reverse and remand the case to allow the State to establish a factual basis for the crimes. In light of our resolution, we need not address Buenneke's challenge to the mandatory minimum sentence.

**REVERSED AND REMANDED.**